# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| *In re BP p.l.c. Securities Litigation* | No. 4:10-md-02185 |
| ------------------------------------------------------- | |
| This document relates to: | |
| | |
| *Alameda County Employees' Retirement Association et al.* v. *BP p.l.c. et al.* | No. 4:12-cv-1256 (cons.) |
| | |
| *Connecticut Retirement Plans & Trust Funds et al.* v. *BP p.l.c. et al.* | No. 4:12-cv-1272 |
| | |
| | Honorable Keith P. Ellison |
| | JURY TRIAL DEMANDED |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS THE CONNECTICUT AND ALAMEDA COMPLAINTS

OF COUNSEL:

Darren J. Check
Gregory M. Castaldo
Matthew L. Mustokoff
Michelle M. Newcomer
Margaret E. Onasch
KESSLER TOPAZ MELTZER
  AND CHECK, LLP
280 King of Prussia Road
Radnor, PA  198087
Tel:  (610) 667-7706
Fax: (610) 667-7056

Marc I. Gross
Jeremy A. Lieberman
Jason S. Cowart
Matthew L. Tuccillo
Emma Gilmore
POMERANTZ GROSSMAN HUFFORD
  DAHLSTROM & GROSS, LLP
600 Third Avenue
New York, NY  10016
Tel: (212) 661-1100
Fax: (212) 661-8665

*Attorneys for Plaintiffs Connecticut Retirement Plans and Trust Funds, North Carolina Department of State Treasurer, Public Employees' Retirement Association of Colorado, City of Philadelphia Board of Pensions and Retirement, Los Angeles County Employees' Retirement Association, and San Diego City Employees' Retirement System*

*Attorneys for Plaintiffs Alameda County Employees Retirement Association, Employees Retirement System of the City of Providence, and State-Boston Retirement System*

ATTORNEYS IN CHARGE:

Bernardo S. Garza
S.D. Tex. Bar No. 4779
State Bar No. 03663500
CALLIER & GARZA, LLP
4900 Woodway, Suite 700
Houston, TX  77056
Tel:  (713) 439-0248
Fax:  (713) 439-1908

Sammy Ford IV
Federal Bar Number 950682
Texas Bar Number: 24061331
ABRAHAM, WATKINS, NICHOLS,
 SORRELS, AGOSTO & FRIEND
800 Commerce Street
Houston, Texas 77002
Tel: (713) 222-7211
Fax: (713) 225-0827

## TABLE OF CONTENTS

**Page**

NATURE AND STAGE OF THE PROCEEDINGS .................................................... 1

STATEMENT OF THE ISSUES ................................................................................ 2

SUMMARY OF THE ARGUMENT ......................................................................... 3

OVERVIEW OF DEFENDANTS' FALSE AND MISLEADING STATEMENTS ................... 8

I.     TEXAS LAW GOVERNS PLAINTIFFS' STATE LAW CLAIMS ............................... 10

       A.     There Is No Conflict of Law Regarding the Elements of Plaintiffs' Common Law
              Fraud and Negligent Misrepresentation Claims; Thus the Law of the Forum
              (Texas) Applies ..................................................................................... 10

       B.     Any Conflicts Related to Plaintiffs' Other Claims Demonstrate that Texas Has the
              Greater Interest Because Texas Law Provides More Rights and Remedies Than
              English Law ........................................................................................... 11

       C.     The Restatement § 148 Factors Favor the Application of Texas Law ................. 12

              1.     The Majority of the Statements Were Made in the U.S., Not England .... 13

              2.     Most Defendants Reside in Texas; No Plaintiff Resides in England ........ 14

              3.     The Misrepresentations Concerned Operations by a Texas-based Company
                     in the Gulf of Mexico ................................................................. 15

              4.     Plaintiffs Received the Misrepresentations Primarily in the U.S. ........... 16

              5.     Plaintiffs' Reliance Occurred Primarily in the U.S. .......................... 16

II.    THERE IS NO JUSTIFICATION FOR DISMISSING PLAINTIFFS' CLAIMS UNDER
       THE DOCTRINE OF *FORUM NON CONVENIENS* ...................................... 18

       A.     English Courts Lack Jurisdiction Over the Entire Action, Which Cannot Be
              Bifurcated Under *Forum Non Conveniens* ........................................... 19

       B.     The Private Interest Factors Demonstrate That This Court is the Most Convenient
              Forum .................................................................................................. 19

       C.     The Public Interest Factors Demonstrate That This Court is the Most Convenient
              Forum .................................................................................................. 22

III.   DEFENDANTS' CHALLENGES TO THE SUFFICIENCY OF PLAINTIFFS'
       ALLEGATIONS FAIL .......................................................................................... 25

A.   ██████████████████████████████████████ ....... 25

B.   Plaintiffs Sufficiently Plead Defendants' Intent to Induce Reliance .................... 31

C.   Plaintiffs Sufficiently Plead Reliance on Defendants' Misstatements ................ 37

D.   Defendants' Challenges to Certain Alleged Misrepresentations ████████████ ████████ Also Fail ................................................................................ 41

E.   Plaintiffs Sufficiently Plead A Claim For Negligent Misrepresentation ............. 44

IV.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT BARRED BY THE DORMANT COMMERCE CLAUSE ........................................................................... 45

A.   Defendants' Argument Ignores Decades of Dormant Commerce Clause Jurisprudence ........................................................................... 46

B.   Neither *National Century* Nor *Morrison* Support Defendants' Argument ........... 50

CONCLUSION ........................................................................................... 55

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*A.S. Goldmen & Co., Inc.* v. *New Jersey Bureau of Securities*,
    163 F.3d 780 (3d Cir. 1999)....................................................................48

*Allen v. Devon Energy Holdings, L.L.C.*,
    367 S.W.3d 355 (Tex. App.—Houston [1st Dist.] 2012) .......................35

*Allstate Ins. Co. v. Countrywide Fin. Corp.*,
    824 F. Supp. 2d 1164 (C.D. Cal. 2011) ..................................................39

*Amzak Corp.* v. *Reliant Energy, Inc.*,
    No. 03-cv-0877, 2004 WL 1882482 (N.D. Ill. 2004) .............................38

*Anderson v. Thompson*,
    No. 1:07-cv-100, 2008 WL 820024 (E.D. Tenn. Mar. 25, 2008) ....................37-38

*Aquaplex, Inc. v. Rancho La Valencia, Inc.*,
    297 S.W.3d 768 (Tex. 2009).....................................................................42

*Baron v. Strassner*,
    7 F. Supp. 2d 871 (S.D. Tex. 1998). ..................................................17, 50

*Baxter v. A.R. Baron & Co.*,
    1995 WL 600720 ......................................................................................38

*Berkowitz v. Baron*,
    428 F. Supp. 1190 (S.D.N.Y. 1977)....................................................33, 39

*BMW of North America v. Gore*,
    517 U.S. 559 (1996)..............................................................................49, 54

*Boyd Rosene & Associates, Inc. v. Kansas Mun. Gas Agency*,
    174 F.3d 1115 (10th Cir. 1999) ...............................................................12

*Brown-Forman Distillers* v. *N.Y. State*,
    476 U.S. 573 (1986)..............................................................................50, 51

*Buzzard* v. *Roadrunner Trucking, Inc.*,
    966 F.2d 777 (3d Cir. 1992)...............................................................3, 8, 48

*C.A. Dickerson v. Bailey*,
    336 F.3d 388 (5th Cir. 2003) ...................................................................46

*Camden County Board of Chosen Freeholders* v. *Beretta U.S.A. Corp.*,
123 F. Supp. 2d 245 (D.N.J. 2000) ...................................................................49

*Casarez v. Val Verde County*,
27 F. Supp. 2d 749 (W.D. Tex. 1998)................................................................12

*Celanese Corp. v. Coastal Water Authority*,
475 F. Supp. 2d 623 (S.D. Tex. 2007) ..............................................................38

*Chrysler Capital Corp. v. Century Power Corp.*,
800 F. Supp. 1189 (S.D.N.Y. 1992)................................................3, 47, 48, 49, 50

*Cincinnati v. Beretta U.S.A. Corp.*,
768 N.E.2d 1136 (2002)....................................................................................54

*Cipollone v. Liggett Grp., Inc.*,
505 U.S. 504 (1992)..........................................................................................54

*City of Boston* v. *Smith & Wesson Corp. et al.*,
No. 199902590, 2000 WL 1473568 (Mass. Supp. Jul. 13, 2000) ...........................49

*City of New Orleans Employees' Ret. Sys. ex rel. BP P.L.C. v. Hayward*,
No. 12-20019, 2013 WL 174251 (5th Cir. Jan. 16, 2013)......................................22

*Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*,
No. EP-11-CV-166, 2011 WL 5976918 (W.D. Tex. Nov. 29, 2011)......................40

*Commonwealth of Pa.* v. *TAP Pharm. Prods.s, Inc., et al.*,
36 A.3d 1197, 1234 (Pa. Comm. Ct. 2011) .........................................................49

*Cooper v. McBeath*,
11 F.3d 547 (5th Cir. 1994) ...............................................................................47

*Cowden v. Cowden*,
143 Tex. 446 (Tex. 1945) ..................................................................................35

*Crisp v. Southwest Bancshares Leasing Co.*,
586 S.W.2d 610 (Tex. App. – Amarillo 1979) .....................................................11

*Crowley* v. *Cybersource Corp.*,
166 F. Supp. 2d 1263 (N. D. Cal. 2001) ..............................................................48

*CTS Corp.* v. *Dynamics Corp. of Am.*,
481 U.S. 69 (1987)......................................................................................46, 49

*Deep Marine Tech., Inc. v. Conmaco/Rector L.P.*,
515 F. Supp. 2d 760 (S.D. Tex. 2007) .......................................................2, 12, 14

*Dow Chemical Co.* v. *Alfaro et al.*,
  786 S.W.2d 674 (Tex. 1990).................................................................50

*Edgar* v. *MITE Corp.*,
  457 U.S. 624 (1982)..........................................................................50

*Eric M. Berman, P.C.* v. *City of New York*,
  No. 09-cv-3017 (ENV)(CLP), 2012 WL 4514407 (E.D.N.Y. 2012) ..............51, 55

*Erica P. John Fund, Inc. v. Halliburton*,
  131 S. Ct. 2179, 2183 (2011). ........................................................38, 51, 55

*Ernst & Young v. Pacific Mutual*,
  51 S.W.3d 573,578-81 (Tex. 2001) ...............................................31, 34, 36, 39

*Exxon Corp. v. Emerald*,
  348 S.W.3d 194 (Tex. 2011)..................................................................36

*Fagan Holdings, Inc. v. Thinkware, Inc.*,
  750 F. Supp. 2d 820 (S.D. Tex. 2010) (Ellison, J.)........................................17

*Fed. Land Bank Ass'n of Tyler v. Sloane*,
  825 S.W.2d 439 (Tex. 1991)..................................................................10

*Grant Thornton LLP* v. *Prospect High Income Fund, ML CBO IV (Cayman), Ltd., et al.*,
  314 S.W.3d 913 (Tex. 2010)...........................................................37, 40, 46

*Grant Thornton LLP v. Suntrust Bank*,
  133 S.W.3d 342 (Tex. App.-Dallas 2004) ........................................... passim

*Gray v. Bayer Corp.*,
  No. 08-4716 (JLL), 2009 WL 1617930 (D.N.J. June 9, 2009)............................38

*Green Int'l, Inc. v. Solis*,
  951 S.W.2d 384 (Tex. 1997)..................................................................10

*Gulf Oil Corp. v. Gilbert*,
  330 U.S. 501 (1947)..........................................................................19

*Hall v. GE Plastic Pacific PTE Ltd.*,
  327 F.3d 391 (5th Cir. 2003) ................................................................23

*Hawkins v. Upjohn Co.*,
  890 F. Supp. 609 (E.D. Tex. 1994)...........................................................41

*Healy* v. *Beer Inst.*,
  491 U.S. 324 (1989)......................................................................50, 51

*Highland Crusader Offshore Partners, L.P. v. Motient Corp.*,
    281 S.W.3d 237 (Tex. App.—Dallas 2009)................................................18

*Houston Cas. Co. v. Certain Underwriters at Lloyd's London*,
    51 F. Supp. 2d 789 (S.D. Tex. 1999) ........................................................24

*In re Air Crash Disaster near New Orleans*,
    821 F.2d 1147 (5th Cir. 1987) ...............................................2, 18, 19, 20, 22

*In re BP p.l.c. Sec. Litig.*,
    No. 10-md-2185, 2013 WL 487011 (S.D. Tex. Feb. 6, 2013)...................6, 7, 8, 30

*In re BP p.l.c. Sec. Litig.,*
    843 F. Supp. 2d 712 (S.D. Tex. 2012) ................................................. passim

*In re BP p.l.c. Sec. Litig.*,
    MDL Docket No. 2185, Notice of Potential ................................................20

*In re BP p.l.c. Sec. Litig.*,
    No. 10-md-2185, 2012 WL 4739681 (S.D. Tex. Oct. 1, 2012)...............................15

*In re BP S'holder Deriv. Litig.*,
    No. 10-md-2185, 2011 WL 4345209 (S.D. Tex. Sept. 15, 2011)....................21, 22

*In re Compaq Sec. Litig.*,
    848 F. Supp. 1307 (S.D. Tex. 1992) .........................................................38

*In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*,
    490 F. Supp. 2d 784 (S.D. Tex. 2007) ....................................................38, 39

*In re Enron Corp. Sec., Deriv. and ERISA Litig.*,
    761 F. Supp. 2d 504 (S.D. Tex. 2011) ......................................................30

*In re Enron Corp. Sec., Derivative & ERISA Litig.*,
    623 F. Supp. 2d 798 (S.D. Tex. 2009) ......................................................11

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*,
    No. 3:03-cv-00481 2010 WL 9077875 (S.D. Tex. Jan. 19, 2010)................... passim

*In re Enron Corp. Sec. Derivative & "ERISA" Litig.*,
    540 F. Supp. 2d 800 (S.D. Tex. 2007) ......................................................40

*In re Enron Corp. Sec, Derivative & ERISA Litig.*,
    No. MDL-1446, 2007 WL 789141 (S.D. Tex. Mar. 12, 2007)..............................49

*In re Fortune Sys. Sec. Litig.*,
    No. C-83-3348(A), 1987 WL 34632 (N.D. Cal. July 30, 1987)........................31, 32

*In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*,
    755 F. Supp. 2d 857 (S.D. Ohio 2010) ..............................................48, 51, 52, 53

*In re Suprema Specialties, Inc. Sec. Litig.*,
    438 F.3d 256 (3d Cir. 2006).....................................................................40

*Industrial Indem. Co.* v. *Chapman and Cutler*,
    22 F.3d 1346 (5th Cir. 1994) ...................................................................50

*Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*,
    341 S.W.3d 323 (Tex. 2011)....................................................................44

*Jaynes* v. *Commonwealth of Virginia*,
    48 Va. App. 673 (Va. Ct. App. 2006) .......................................................51

*Karim v. Finch Shipping Co.*,
    265 F.3d 258 (5th Cir. 2001) ..............................................................19, 22

*Klein v. O'Neal, Inc.*,
    No. 7:03-cv-102-D, 2008 WL 2152030 (N.D. Tex. 2008) ......................41

*Morrison v. National Australia Bank*,
    130 S. Ct. 2869 (2010)................................................................... passim

*Mumblow v. Monroe Broad, Inc.*,
    401 F.3d 616 (5th Cir. 2005) ..............................................................5, 11

*N.Y. Times Company v. Sullivan*,
    376 U.S. 254 (1964) ................................................................................54

*NuVasive, Inc.*, *v. Renaisssance Surgical Ctr. North L.P.*,
    853 F. Supp. 2d 654 (S.D. Tex. 2012) ....................................................29

*Owens-Corning Fiberglass Corp. v. Malone*,
    972 S.W.2d 35 (Tex. 1988)......................................................................12

*Perry v. Cohen*,
    285 S.W.3d 137 (Tex. App. 2009)...........................................................40

*Pike* v. *Bruce Church, Inc.*,
    397 U.S. 137 (1970)...................................................................... passim

*Prospect High Income Fund v. Grant Thornton, LLP*,
    203 S.W. 3d 602 (Tex. App.—Dallas Oct, 18, 2006).........................3, 39, 45

*Rio Grande Oil Co. v. State*,
    539 S.W.2d 917 (Tex. App. 1976)...........................................................49

*Rio Grande Royalty Comp., Inc. v. Energy Transfer Partners, L.P.*,
786 F. Supp. 2d 1202 (S.D. Tex. 2009) ................................................. 36

*San Diego Building Trades Council v. Garmon*,
359 U.S. 236 (1959) ............................................................................... 55

*Sanchez v. Liggett & Myers, Inc.*,
187 F.3d 486 (5th Cir. 1999) ................................................................. 38

*Schneider Nat'l. Transp. v. Ford Motor Co.*,
280 F.3d 532 (5th Cir. 2002) ................................................................. 11

*Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*,
81 F.3d 605, 614 (5th Cir. 1996) ........................................................... 45

*Soluntioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*,
237 S.W.3d 379 (Tex. App. 2007) ......................................................... 29

*Spoljaric v. Percival Tours, Inc.*,
708 S.W. 2d 432 (Tex. 1986) ........................................................... 32, 37

*State* v. *Heckel*,
143 Wash.2d 824 (Wash. 2001) ............................................................ 51

*Steiner v. Southmark Corp.*,
734 F. Supp. 269 (N.D. Tex. 1990) ....................................................... 38

*Stone v. Frontier Airlines, Inc.*,
256 F. Supp. 2d 28 (2002) ..................................................................... 54

*Sullivan v. Leor Energy LLC*,
No. H-05-3913, 2006 WL 2792909 (S.D. Tex. Sept. 27, 2006) ............ 40

*Timberlake v. Synthes Spine Co.*,
2009 WL 926990 (S.D. Tex. Mar. 31, 2009) ............................. 37, 38, 40

*Tracker Marine, L.P. v. Ogle*,
108 S.W. 3d 349 (Tex. App. – Houston 2003). ..................................... 14

*Transport Ins. Co. v. Faircloth*,
898 S.W.2d 269 (Tex. 1995) ................................................................. 44

*Trestman v. Microstrategy*,
No. 01-0685, 2001 WL 1471707 (E.D. La. Nov. 15, 2001) .................. 21

*Vasquez v. Bridgestone/Firestone, Inc.*,
325 F.3d 665 (5th Cir. 2003) ................................................................. 18

x

U.K. CASES

*Barry v. Croskey*,
  (1861) 2 J. & H. 1 .................................................................................36

*Possfund Custodian Trustee Ltd. V. Diamond; Parr v. Diamond,*
  [1996] 1 W.L.R. 1351 ...........................................................................36

STATUTES

43 U.S.C. § 1340(c)(1)...............................................................................34

Financial Services and Markets Act of 2000 ("FSMA") ....................... passim

Securities Exchange Act of 1934 .......................................................... passim

Tex. Bus. Comm. Code § 27.01 ...........................................................11, 12, 48

Tex. Prac., Contract Law § 2.20 .................................................................32

OTHER AUTHORITIES

Fed R. Civ. P. 9(b) ............................................................................... passim

Fed. R. Civ. P. 12(g) ..............................................................................10, 16

17 C.F.R. § 249.310 .....................................................................................34

30 C.F.R § 250.219(a)(1)-(2) ......................................................................34

Restatement (Second) of Conflict of Laws § 6 ............................................12

Restatement (Second) of Conflict of Laws § 148............................... passim

Restatement (Second) of Torts § 531...........................................................33

Daniel R. Fischel, *Use of Modern Finance Theory in Securities Fraud Cases*, 38 Bus
  Law 1 (1982)...........................................................................................40

Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*,
  110 Yale L.J. 785 (2001) ........................................................................52

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs Alameda County Employees Retirement Association ("Alameda"), Employees Retirement System of the City of Providence ("Providence"), and State-Boston Retirement System ("State-Boston") (collectively, the "Alameda Plaintiffs") filed their First Amended Consolidated Complaint on December 6, 2012 (No. 4:12-cv-1256, Dkt. No. 39) (the "Alameda Complaint," all cites herein to which are labeled "AC ¶__"). Plaintiffs Connecticut Retirement Plans and Trust Funds ("Connecticut"), North Carolina Department of State Treasurer ("North Carolina"), Public Employees' Retirement Association of Colorado ("Colorado"), City of Philadelphia Board of Pensions and Retirement ("Philadelphia"), Los Angeles County Employees' Retirement Association ("Los Angeles"), and San Diego City Employees' Retirement System ("San Diego") (collectively, the "Connecticut Plaintiffs"), filed their Third Amended Consolidated Complaint on November 30, 2012 (No. 4:12-cv-1272, Dkt. No. 48) (the "Connecticut Complaint," all cites herein to which are labeled "CC ¶__"). These public pension funds collectively manage and invest billions of dollars for the benefit of thousands of current and retired employees of the jurisdictions in which they operate.

The Alameda Plaintiffs and the Connecticut Plaintiffs, together referred to herein as "Plaintiffs," assert state common law and statutory claims against Defendants arising under the laws of Texas or, alternatively, the laws of the states in which Plaintiffs reside. Defendants moved to dismiss these lawsuits by motion dated December 21, 2012 (No. 4:12-cv-1256, Dkt. No. 46; No. 4:12-cv-1272, Dkt. No. 56) and filed a Memorandum of Law in Support of their Consolidated Motion to Dismiss the Plaintiffs' Complaints ("Def. Br.") (No. 4:12-cv-1256, Dkt. No. 47; No. 4:12-cv-1272, Dkt. No. 58). To minimize the burden on the Court from duplicative

1

arguments, Plaintiffs agreed to jointly file this Memorandum of Law in Opposition to Defendants' motion.  *See* No. 4:12-cv-1256, Dkt. No. 54.

*Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010) does not support Defendants' motion.   In that case, the Supreme Court focused expressly on the language of Section 10(b) of the Securities Exchange Act of 1934 (the "Exchange Act") to hold that Congress did not intend for that statute to prohibit frauds in connection with securities transactions on foreign exchanges.  At the same time, the *Morrison* court recognized that non-federal securities law claims for fraud *simpliciter*, like the state law claims asserted here, were not similarly restricted.  Plaintiffs are not seeking to "end run" *Morrison*.  They seek vindication of the state law rights not foreclosed by *Morrison*.

## STATEMENT OF THE ISSUES

1.   Does Texas law apply to Plaintiffs' claims where the majority of the Defendants are based in or reside in Texas, most of the alleged misrepresentations were made in the United States (including Texas), all of the misstatements concerned the operations of BP's Texas-based subsidiaries including, particularly, their deepwater drilling in the Gulf of Mexico, and Texas law requires the same proofs as English law on the core common law claims while providing greater rights of action and remedies *in toto* than English law?  *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 357-61 (Tex. App.-Dallas 2004); *Deep Marine Tech., Inc. v. Conmaco/Rector L.P.*, 515 F. Supp. 2d 760, 772 (S.D. Tex. 2007).

2.   Should the Court dismiss Plaintiffs' state law claims under the *forum non conveniens* doctrine where the Court will adjudicate Plaintiffs' federal securities law claims against the same Defendants based on the same alleged misrepresentations, where most of the evidence and the witnesses are located in Texas, where Defendants have repeatedly asserted that the Court should exercise jurisdiction over substantially similar claims in related actions, and where the law of the forum state is the applicable law?  *In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1162-65 (5th Cir. 1987) (*en banc*), *vacated on other grounds sub. Nom., Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989).

3.   Have Plaintiffs adequately pled claims for common law fraud and negligent misrepresentation and under Section 10(b) of the Exchange Act based on, *inter alia*, Plaintiffs' allegations that they, ███████████████████████, had a direct relationship with Defendants, including allegations that Plaintiffs were pre-existing BP

shareholders ███████████████████ that Defendants had reason to expect that Plaintiffs would rely on their representations, and that Plaintiffs so relied? *In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 3:03-cv-00481, 2010 WL 9077875, at *46-48 (S.D. Tex. Jan. 19, 2010); *Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W. 3d 602, 615-16 (Tex. App.—Dallas Oct, 18, 2006), *reversed in part on other grounds, Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W. 3d 913 (Tex. 2010); Restatement (Second) of Torts §§ 531, 536.

4.  Should Plaintiffs' state law claims be dismissed under the dormant Commerce Clause notwithstanding that such anti-fraud remedial measures do not burden, antagonize or otherwise interfere with foreign commerce? *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970); *Buzzard* v. *Roadrunner Trucking, Inc.*, 966 F.2d 777, 784 (3d Cir. 1992); *Chrysler Capital Corp. v. Century Power Corp.*, 800 F. Supp. 1189, 1192 (S.D.N.Y. 1992).

## SUMMARY OF THE ARGUMENT

In these actions, nine U.S. public pension funds seek to recover under U.S. state law for their losses caused by material misstatements issued, for the most part, in the U.S., by predominantly Texas-based U.S. Defendants, concerning events that transpired in the U.S., which resulted in millions of dollars in damages in the U.S.

Defendants' assertion that Plaintiffs' state law claims are governed by English law is unsupportable.  Texas has, by far, the greatest interest in this litigation.  Two of the three corporate Defendants—BP Exploration & Production, Inc. ("BP Exploration") and BP America, Inc. ("BP America")—are based in Texas.  Four of the seven Individual Defendants reside in Texas (and a fifth was the CEO of BP Exploration).  Most of the statements at issue were made in the U.S., including Texas.  All of the post-spill explosion misrepresentations, to which Defendants have pled guilty, were issued in the U.S.  All of the misleading statements at issue concerned BP's U.S. operations, including BP's implementation of the Baker Panel's process safety recommendations in the wake of a fatal explosion at its Texas City refinery and the deepwater drilling operations of BP's Houston-based subsidiaries in the Gulf of Mexico.  Indeed,

the jurisdictions with the next-most meaningful interest in these actions are the home states of the Plaintiffs where the damages were suffered.

England, by contrast, has far less interest in these actions.  Plaintiffs are not citizens of England, Defendants' misrepresentations did not concern events in England, and of the 49 relevant misrepresentations made by Defendants, only 19 were made in England.  While BP's common stock trades on the London Stock Exchange ("LSE"), its American Depositary Share ("ADS") securities trade in the U.S., and ███████████████████████████████████ ███████  Moreover, although BP plc is incorporated in the U.K., its website acknowledges that its roots are firmly planted in the U.S.  Having acquired the first Rockefeller oil company, Standard Oil of Ohio, it is no surprise that 40% of BP's fully-integrated operations are here, it is the U.S.'s largest oil producer, and it has a major presence in Texas, which is the principal place of business of Defendants BP Exploration and BP America.  Finally, only a minority of the Individual Defendants are U.K. residents, though even they routinely travel here in the course of their business and did so in the immediate aftermath of the April 2010 oil spill.  Texas' interest in ensuring that those doing business within its borders do not commit fraud (and, secondarily, the interests of Plaintiffs' home states) far outweighs whatever minimal interest England has in Plaintiffs' claims.

Comparing Texas and English law reinforces this conclusion.  Reflecting our interconnected legal history, and as demonstrated by the Declaration of Thomas William Gordon Lowe QC ("Lowe Decl."), submitted herewith, the elements of common law claims for fraud, fraud by nondisclosure or omission, and negligent misrepresentation are virtually the same under Texas and English law.  Thus, because there is no conflict with respect to the common law claims most central to this litigation, the law of the forum (Texas) applies.  *See, e.g., Mumblow v.*

*Monroe Broad, Inc.*, 401 F.3d 616, 620 (5th Cir. 2005) ("[I]f the laws of the states do not conflict…we simply apply the law of the forum state").  Moreover, because Texas provides more robust remedies to Plaintiffs than does England, applying Texas law will "best achieve" the anti-fraud policy of both jurisdictions.  *Grant Thornton LLP v. Suntrust Bank*, 133 S.W.3d 342, 361 (Tex. App.—Dallas 2004).

Far from supporting Defendants' argument, the Supreme Court's decision in *Morrison v. National Australia Bank Ltd.*, 130 S. Ct. 2869 (2010) demonstrates why it should be rejected. *Morrison* considered the scope of Section 10(b).  The Court held that Congress did not intend Section 10(b) to reach frauds in connection with stock purchases on foreign exchanges because the plain meaning of the statutory language limited its reach to deceptions *in connection with securities purchases on U.S. exchanges*.  Plaintiffs' fraud claims under state law have no similar limitation, and Defendants cannot cite a single decision to the contrary.  Indeed, the *Morrison* decision itself, as well as the *amicus* brief submitted by the U.K. in that case, recognized that claims like those asserted here *would extend to such frauds even if federal securities law did not*. 130 S. Ct. at 2886-87; Brief for United Kingdom as Amicus Curiae Supporting Respondents, *Morrison v. National Australia Bank*, 130 S. Ct. 2869 (2010) (No. 08-1191), 2010 WL 723009 ("U.K. Amicus Curiae Br."), at *37-38 ("fraud continues to be actionable in the U.S. under state law").

Defendants' related argument, that the Court should dismiss Plaintiffs' state law claims on the grounds of *forum non conveniens*, turns that doctrine on its head.  Nothing could be more inconvenient than forcing the parties to adjudicate Plaintiffs' state law claims in England and their federal securities claims in Texas.  This Court has exclusive jurisdiction over Plaintiffs' federal securities claims based on purchases of BP ADSs.  It also has exclusive jurisdiction over

the *In re BP plc Securities Litigation* class action plaintiffs' ("Class Plaintiffs") federal securities claims for ADS purchases.  All of these claims arise from the same facts and circumstances and implicate the same Defendants, witnesses, testimony and documents as Plaintiffs' state law claims.  Maintaining Plaintiffs' state law claims in this Court is plainly more efficient than forcing Plaintiffs to litigate those claims in a foreign country and simultaneously pursue their ADS claims here.  Such claim splitting into two forums on separate continents flies in the face of the *forum non conveniens* doctrine.  Indeed, Defendants admitted as much when they convinced the MDL Panel to transfer actions brought by the State of Oregon (No. 4:12-cv-1836, or the "Oregon Action") and three Ohio public pension funds (No. 4:12-cv-1837, or the "Ohio Action") to this Court.  Moreover, Defendants argued in the Ohio Action that, by enacting the Outer Continental Shelf Lands Act ("OCSLA"), Congress affirmatively decided to open the federal courts to state law claims like those at issue in Plaintiffs' cases.  Defendants have reiterated that argument in removing and transferring other related cases to this Court.  They should not be heard now to argue that it would be inconvenient to do what they have previously and repeatedly argued was Congress's intent.

Regardless of whether Texas or English law applies, however, Plaintiffs have satisfied all applicable pleading requirements.  Defendants do not dispute the fact that, based on allegations identical to those made by Plaintiffs, this Court has already held that the Class Plaintiffs sufficiently alleged that Defendants Suttles, Hayward, BP plc, BP Exploration and BP America committed federal securities fraud.  *See In re BP plc Sec. Litig.*, 843 F. Supp. 2d 712, 799 (S.D. Tex. 2012); *In re BP plc Sec. Litig.*, No. 10-md-2185, 2013 WL 487011, at *35 (S.D. Tex. Feb. 6, 2013).  The Court held that Class Plaintiffs had alleged that these Defendants engaged in a multi-year public relations campaign designed to mislead investors, such as Plaintiffs, into

6

believing that BP was making improvements in process safety as measured against the Baker Panel recommendations, that BP was able to respond to an oil spill in the Gulf of Mexico, and that the *Deepwater Horizon* oil spill was smaller and less grave than it was in actuality.  *Id.* Plaintiffs allege these facts and, in addition, that Defendant BP Exploration pled guilty to obstruction of Congress regarding the amount of oil spilling into the Gulf as part of a criminal plea deal that assessed a record $4 billion penalty; that Defendant Rainey was indicted for obstructing Congress with respect to the oil flow rates; and that Defendant BP agreed to pay $525 million (the third-largest civil penalty ever) to the Securities & Exchange Commission ("SEC") to settle securities fraud charges related to Defendants' post-spill understatements.

Especially against this backdrop, Plaintiffs sufficiently allege both that Defendants intended to induce Plaintiffs' reliance and that Plaintiffs actually relied on BP's fraudulent representations and omissions.  ████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████ Defendants' statements to investors (including Plaintiffs) in SEC filings, Annual Meeting remarks, and teleconferences with investors and analysts, the totality of which led Plaintiffs to purchase BP stock to their detriment.  Given that Rule 9(b) does not require Plaintiffs to plead reliance or Defendants' intent with particularity, and that courts therefore ordinarily reserve resolution of such issues for the fact-finder, these allegations are legally sufficient.  Moreover, because Plaintiffs assert both negligence and fraud claims, any statements dismissed from the Class Action for failure to plead scienter, or which the Court now finds lack

scienter as pled in Plaintiffs' Complaints, are nevertheless viable under Plaintiffs' negligent misrepresentation claims.

As a last-ditch effort to escape responsibility for their misconduct under state law, Defendants argue that the dormant Commerce Clause immunizes them because Plaintiffs purchased their BP common stock on the LSE. This argument ignores decades of settled law, as evidenced by Defendants' inability to cite a single decision striking down claims like those asserted here. As a long line of authorities demonstrates, Plaintiffs' state law claims do not violate the Commerce Clause because they neither discriminate against nor burden foreign commerce. Instead, Plaintiffs' claims seek to remediate the promulgation of fraudulent statements by predominantly Texas-based Defendants, mostly in the U.S., to U.S. residents. Defendants ask the Court to be the first to dismiss such claims on Commerce Clause grounds. The Court should reject that invitation.

## OVERVIEW OF DEFENDANTS' FALSE AND MISLEADING STATEMENTS

Attached hereto as Plaintiffs' Appendix A is a chart listing the 51 false and misleading "statements" alleged by Plaintiffs—defined as each instance (*e.g.*, ████ SEC filing, press release, interview, etc.) in which one or more false or misleading representations were made.[1] This chart identifies where and when each statement was made, the author(s) or speaker(s), the corporate Defendant to which each is attributable, the subject matter, the corresponding paragraphs in the Complaints, and whether the statement was made by a Texas-resident Defendant, was made in Texas, or concerned BP's operations in Texas or the Gulf of Mexico.

---

[1]      The Complaints allege 51 "statements." *See* Appendix A. However, in light of the Court's February 6, 2013 decision (*In re BP plc Sec. Litig.*, 2013 WL 487011) on Defendants' motion to dismiss the Second Consolidated Amended Complaint in the Class Action, Plaintiffs no longer assert claims related to the July 24, 2007 statement by Hayward (AC ¶¶ 337; CC ¶¶ 159) or the September 25, 2007 statement by Inglis (AC ¶¶ 339; CC ¶¶ 161).

*Id.*  As demonstrated therein, 30 of the 49 statements (61.2%) alleged in the Complaints were made in the U.S.—in Texas, Louisiana and Washington, D.C.  *Id.*  Focusing on the post-spill time period following the April 20, 2010 *Deepwater Horizon* explosion, the 17 misstatements were made in the U.S.  *Id.*  Moreover, all of Defendants' statements were made in Texas, were made by Texas residents, and/or concerned BP's operations in Texas and the Gulf of Mexico. *Id.*

Plaintiffs' Appendix A demonstrates that Defendants have skewed the choice of law analysis in favor of English law.  *Compare* Plaintiffs' Appendix A *with* Defendants' Appendix 3.  *First*, Defendants acknowledge the existence of only 43 statements—eight fewer than were pled in the Complaints.  *All* statements "absent" from Defendants' count (15% of the total) were made in the U.S.  To eliminate them, Defendants improperly combined separate misstatements on the date into a purported single statement.  For example, Defendants counted Defendant Suttles' May 21, 2010 "Good Morning America" interview and his separately-made remarks at a Unified Command press briefing that day as a single statement.  *Second*, Defendants have affixed errant geographic designations to numerous statements, thereby removing an additional eight statements (another 15% of the total) from the U.S. side of the ledger.  For example, Defendants assert that BP's Forms 20-F (from 2007, 2008, and 2009) and Form 6-K filings, which undisputedly were filed with the SEC in Washington, D.C., were instead made in London.  They also characterize as "Unclear" the Initial Exploration Plan for Mississippi Canyon Block 252 ("IEP") and the Regional Oil Spill Response Plan ("OSRP") filed with the Minerals Management Service of the U.S. Department of the Interior ("MMS"); both are clearly U.S. statements (one issued in Texas, one issued in Louisiana, as indicated on the documents), but Defendants' use of the "Unclear" label removes them from the U.S. tally.  Indeed, Defendants'

own papers are contradictory: Defendants' brief acknowledges 17 U.S. statements whereas their Appendix 3 only acknowledges 15.  *Compare* Def. Br. at 13-14 *with* Def. Appendix 3.[2]

## I.   TEXAS LAW GOVERNS PLAINTIFFS' STATE LAW CLAIMS

Texas has the greatest interest in these actions.  Defendants' assertion that Plaintiffs' state law claims are governed by English law is unsupportable.

### A.   There Is No Conflict of Law Regarding the Elements of Plaintiffs' Common Law Fraud and Negligent Misrepresentation Claims; Thus the Law of the Forum (Texas) Applies

As a threshold matter, as Defendants appear to concede, the elements of the common law torts for fraud and negligent misrepresentation are substantially similar under Texas and English law.  *See* Moore Decl. at ¶ 40 (elements are the same under Texas and English law); Def. Br. at 20 n.16 (Plaintiffs' supposed "failure to adequately allege actual reliance [under English law] would require dismissal of their common-law claims under Texas . . . law as well.").  *Compare* Lowe Decl. at ¶ 48 (setting forth the elements of common law deceit (fraud) and negligence by misrepresentation under English common law) *with Green Int'l, Inc. v. Solis*, 951 S.W.2d 384, 390 (Tex. 1997) (elements of common law fraud claim under Texas law) *and Fed. Land Bank Ass'n of Tyler v. Sloane*, 825 S.W.2d 439, 442 (Tex. 1991) (elements of common law negligent misrepresentation) (citing Restatement (Second) of Torts § 552 (1977).

---

[2]     Defendants' request for an opportunity to submit what would amount to a second motion to dismiss analyzing the claimed deficiencies of Plaintiffs' allegations under the laws of Texas or any other state, if this Court rejects their choice-of-law analysis (Def. Br. at 20 n.16), should be summarily rejected.  Allowing Defendants to file such a brief would violate Fed. R. Civ. P. 12(g) which prohibits a party from raising a defense or objection omitted from its first motion to dismiss.  Indeed, Defendants have waived any arguments arising out of the laws of Texas (or any other state) not articulated in their initial brief and they should not be allowed to raise such new arguments in Reply.  Additionally, Defendants request for additional briefing runs contrary to their stated objective in asking for and obtaining permission to file a "single" brief of up to 75 pages.  *See* Alameda Action, Dtk. Nos. 40, 41; Connecticut Action Dkt. Nos. 50, 51.  Moreover, Plaintiffs do not separately address any of the arguments raised in Defendant Rainey's Memorandum of Law in Support of His Motion to Dismiss Plaintiffs' Complaints.  Defendants expressly represented that *all* Defendants, including Rainey, would file a single, consolidated brief.  *See id.*  Rainey's separate Memorandum of Law should therefore be stricken and disregarded by the Court.

Thus, at least for these common law claims, no choice-of-law analysis is necessary because the law of the forum state (Texas) applies absent a conflict among potentially applicable laws.  *See Mumblow*, 401 F.3d at 620; *accord Schneider Nat'l. Transp. v. Ford Motor Co.*, 280 F.3d 532, 536 (5th Cir. 2002).

### B.   Any Conflicts Related to Plaintiffs' Other Claims Demonstrate that Texas Has the Greater Interest Because Texas Law Provides More Rights and Remedies Than English Law

Defendants' repeated acknowledgement that Texas provides more robust protection for victims of securities-related fraud than does England leads to the inexorable conclusion that Texas law should be applied.  *First*, Defendants assert that, unlike Texas, England "has a bifurcated system of statutory and common-law liability" pursuant to which claims for misrepresentations contained in certain regulatory filings are not actionable under the common law and must be brought exclusively pursuant to the Financial Services and Markets Act of 2000 ("FSMA").  Def. Br. at 10.  *Second*, Defendants assert that England, unlike Texas, does not recognize a common law aiding and abetting claim.  *Compare* Def. Br. at 11 n.8, 18 n.12 with *Crisp v. Southwest Bancshares Leasing Co.*, 586 S.W.2d 610, 615 (Tex. App.-Amarillo 1979) (upholding trial verdict on aiding and abetting fraud under Texas law).  *Third*, Defendants assert that England, unlike Texas, does not recognize a statutory fraud claim against officers and directors.  *Compare* Def. Br. at 18 n.12, 27 with Tex. Bus. & Comm. Code § 27.01 (statutory fraud remedy).  *Fourth*, Defendants assert that the FSMA has a state of mind requirement not found in Section 27.01 of the Texas Business and Commercial Code.  *Compare* Moore Decl. at ¶¶ 32-33 with *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 623 F. Supp. 2d 798, 807 (S.D. Tex. 2009) ("Statutory fraud differs from common law fraud 'only in that it does not require

proof of knowledge or recklessness as a prerequisite to recovery of actual damages.'") (citation omitted).[3]

Although Defendants identify these disparities in the hope of convincing the Court that a conflict of law exists, the fact that Texas provides greater remedial rights for investors than does England demonstrates that Texas has a superior interest in this case.  *See Grant Thornton*, 133 S.W.3d at 360, 361 (applying Texas law because, *inter alia*, "[m]any [other] states, either by statute or case law, do not permit this sort of action," "almost none of the states are as interested in providing a remedy for the alleged fraud in this case as Texas is in providing a remedy" and Texas "is one of the most supportive of investor protection" when compared to the statutes of the competing forums); *Deep Marine Tech., Inc. v. Conmaco/Rector, L.P.*, 515 F. Supp. 2d 760, 772 (S.D. Tex. 2007) (applying Texas law because "as between Texas and Louisiana, Texas clearly has the prevailing interest in punishing wrongdoers who perpetrate frauds in Texas" given that Texas recognizes punitive damages for fraud and Louisiana does not do so); Restatement (Second) of Conflict of Laws § 6(2)(b), (c), (e) (considering the "relevant policies" of the competing forums and the "basic policies underlying the particular field of law").

## C.    The Restatement § 148 Factors Favor the Application of Texas Law

Applying the factors under Restatement (Second) of Conflicts of Law Section 148, the interests of Texas surpass any other jurisdiction.[4]  Of the 49 alleged misstatements at issue, the

---

[3]     It should also be noted that the FSMA, unlike the Texas Business and Commercial Code, does not provide for punitive damages.  Tex. Bus. & Comm. Code § 27.01(c) (providing for exemplary damages in stock transactions); *Owens-Corning Fiberglass Corp. v. Malone*, 972 S.W.2d 35, 40 (Tex. 1988) (Texas law provides for exemplary damages for fraud); Lowe Decl. ¶ 98 (no punitive damages under FSMA).  In addition, English law also imposes a "loser pays" regime on litigants, whereas Texas law does not.  *See, e.g., Casarez v. Val Verde County*, 27 F. Supp. 2d 749, 754 (W.D. Tex. 1998) ("Other than as modified by statute, American common law generally does not have a "loser pays" rule as does England.").

[4]     Section 148 analyzes the following choice-of-law factors in cases of fraud: "(a) the place, or places, where the plaintiff acted in reliance upon the defendant's representations, (b) the place where the plaintiff received the

majority (30) were made in the U.S., and all (i) were made in Texas, (ii) were made by a Texas-resident Defendant, and/or (iii) concerned BP's operations in Texas and/or the Gulf of Mexico, including the deepwater Gulf drilling operations of BP's Houston-based subsidiary, BP Exploration.  *See* Appendix A.  Moreover, two of the three corporate Defendants are based in Texas; four of the seven Individual Defendants reside in Texas (and a fifth was CEO of one of the Texas-based corporate Defendants); and all of the Plaintiffs are public pension funds located in the U.S.  AC ¶¶ 22-24, 26-27, 30-34; CC ¶¶ 22, 25-30.  England has, at most, an attenuated, secondary relationship to these claims.

As discussed below, three Section 148 factors (c, d, and e) indicate a strong Texas interest, and little English interest.  Two factors (a and b) are neutral as between Plaintiffs' home states and England.  Factor (f) is inapposite.  As such, and given the need for efficient administration, the Section 148 analysis indicates that Texas has the greatest interest in this litigation.

### 1.    The Majority of the Statements Were Made in the U.S., Not England

Plaintiffs' claims predominantly concern false and misleading statements *made in the U.S.*  As discussed on pp. 8-10, *supra*, Defendants miscount the statements alleged in the Complaints and inaccurately identify as having been made in London statements that were made in the U.S.—all to skew the analysis in favor of the U.K.  In actuality, as demonstrated in Plaintiffs' Appendix A, there are 51 statements alleged in the Complaints (not 43 as asserted by Defendants), of which 49 remain potentially viable in light of the Court's February 6, 2013

---

representations, (c) the place where the defendant made the representations, (d) the domicile, residence, nationality, place of incorporation and place of business of the parties, (e) the place where a tangible thing which is the subject of the transaction between the parties was situated at the time, and (f) the place where the plaintiff is to render performance under a contract which he has been induced to enter by the false representations of the defendant." *Grant Thornton*, 133 S.W.3d at 358 (quoting Restatement (Second) of Conflict of Laws § 148(2) (1971)).

decision.  *See supra* note 1.  Of these 49 statements, 30 were made in the U.S., including Texas.

Given Texas' strong interest in "punishing wrongdoers who perpetrate frauds in Texas," Section

148(c) favors Texas law.  *Deep Marine Tech., Inc.* 51 F. Supp. 2d at 772 (quoting *Owens-*

*Corning*, 972 S.W.2d at 40).

### 2.      Most Defendants Reside in Texas; No Plaintiff Resides in England

More of the parties reside in Texas than any other forum.  Two of the three corporate

Defendants—BP Exploration and BP America—are based in Houston.   AC ¶¶ 26-27;

CC ¶ 22(a)-(c).  Five of the seven Individual Defendants—Inglis, Malone, McKay, Rainey and

Suttles—are officers of BP Exploration or BP America, and four of them reside in Texas.  AC ¶¶

30-34; CC ¶ 22(d)-(i).  Plaintiffs are all U.S. public pension funds.  *See* AC ¶¶ 22-24; CC ¶¶ 25-

30.

Although Defendant BP plc is incorporated under U.K. law, it is in every other way a

U.S. corporation: it is the largest fully-integrated oil and gas producer in the U.S. generally and

in the Gulf of Mexico specifically; maintains the headquarters of its BP America and BP

Exploration subsidiaries in Texas; owns and operates significant energy infrastructure in Texas,

including thousands of oil and gas wells, wind farms and refineries; and has brands and gas

stations throughout the U.S.  AC ¶ 25; CC ¶ 22(a)-(c); *see also* www.bp.com.  Forty percent of

BP's assets and workers are located in the U.S. AC ¶ 25.

Given the predominance of Texas-based parties, Section 148(d) strongly favors the

application of Texas law, or secondarily the law of Plaintiffs' home states.  *See Tracker Marine,*

*L.P. v. Ogle*, 108 S.W.3d 349, 356 (Tex. App.-Houston 2003) ("[T]he residence of the plaintiff is

more important than that of the defendant, as the financial loss involved will usually be of

greatest concern there.") (citing Restatement (Second) Conflicts of Laws § 148 cmt. i).  Indeed,

14

in the related Oregon and Ohio Actions, Defendants' counsel *conceded* the application of the plaintiffs' home states' laws, declaring: "Indeed, we readily acknowledge that if this case were to proceed before Your Honor, **Your Honor would be applying Oregon and Ohio law."** Transcript of Sept. 14, 2012 Hearing on Motion to Remand, Case nos. 4:12-cv-1836 (Dkt. No. 30), 4:12-cv-1837 (Dkt. No. 27), at 47 (emphasis added).  England has little interest pursuant to this factor.

### 3. The Misrepresentations Concerned Operations by a Texas-based Company in the Gulf of Mexico

Defendants' misrepresentations concerned BP's U.S. operations, including in particular, the deepwater drilling operations of BP's Houston-based subsidiaries in the Gulf of Mexico. None concerned operations or events in England (or the North Sea).  Plaintiffs allege that Defendants made false and misleading statements regarding, *inter alia*, BP's purported implementation of process safety improvements, drilling safety protocols, and ability to respond to oil spills in the Gulf.[5]  Plaintiffs further allege that Defendants' post-spill misrepresentations all involved gross understatements of the amount of oil leaking into the Gulf.[6]   In fact, Defendants previously admitted that the misstatements concerned operations in the Gulf of Mexico (not England) when they argued that this Court had jurisdiction over the claims asserted in the Ohio Action pursuant to OCSLA.  *See In re BP plc Sec. Litig.*, No. 10-md-2185, 2012 WL 4739681, at *4 (S.D. Tex. Oct. 1, 2012).  Defendants have reiterated that argument repeatedly as

---

[5]      *See, e.g.*, AC ¶¶ 2,331, 333, 335, 337, 339, 341, 343, 345, 347, 349-50, 352, 354-55, 357-58, 360-68, 307, 372, 374-75, 377, 379, 381, 383, 385, 387, 389-90; CC ¶¶ 153, 155, 163, 165, 167, 169, 171, 173, 175, 177-78, 180-81, 183-86, 189, 191-92, 194, 197, 199, 201, 203, 205, 207, 209-10.

[6]      *See, e.g.*, AC ¶¶ 399, 401, 404-06, 414, 416, 418, 420-22, 427-28, 430, 439; CC ¶¶ 214, 216, 218, 220, 222, 224, 226, 228, 230, 232-33, 235-37.

a basis to remove later-filed, related actions.  Thus, the policy underlying Section 148(e) also indicates that England has little interest and weighs heavily in favor of applying Texas law.

### 4.  Plaintiffs Received the Misrepresentations Primarily in the U.S.



■[7]  Thus, most of the misrepresentations were "received" in the U.S.  AC ¶¶ 479, 487, 495; CC ¶¶ 25-30, 336, 343, 350, 357, 364, 371. ██████████████████████

██████.  Accordingly, Section 148(b) favors application of U.S. law, likely the Plaintiffs' home states' laws.[8]

### 5.  Plaintiffs' Reliance Occurred Primarily in the U.S.

Restatement Section 148(a), concerning the place of reliance, does not favor English law. Defendants' suggestion that because Plaintiffs purchased BP's common stock on the LSE, their

---

[7]  ████████████████████████████████████████

[8]  Assuming the Court were to apply the laws of Plaintiffs' home states, Plaintiffs state causes of action for pleading purposes under those states' laws.  Defendants do not challenge the validity of Plaintiffs' claims under the laws of the Plaintiffs' respective home states anywhere in their motion and thus have waived any such arguments. *See* Fed. R. Civ. P. 12(g).

reliance necessarily occurred in England (Def. Br. at 15-16) is overly simplistic.   Though Plaintiffs' purchases of BP common stock were effectuated in England, Plaintiffs' authorization for these purchases and their reliance on Defendants' misrepresentations and omissions ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ occurred primarily in the U.S.

The *Morrison* decision does not provide otherwise.  *See* Def. Br. at 15.  *Morrison* did not define where a plaintiff relies on a misrepresentation, nor did it equate the exchange on which a trade is formally executed with the location of the plaintiff's reliance.  Instead, *Morrison* simply held that, as a matter of federal statutory construction, Section 10(b) only applies to "transactions in securities listed on domestic exchanges, and domestic transactions in other securities."  130 S. Ct. at 2884.[9]

As this Court recently held, "Texas choice-of-law principles require, in tort cases, the use of the 'most significant relationship' test provided by the Restatement (Second) Conflict of Laws."  *Fagan Holdings, Inc. v. Thinkware, Inc.*, 750 F. Supp. 2d 820, 825 (S.D. Tex. 2010) (Ellison, J.).  To that end, Texas courts routinely apply Texas law in securities fraud cases involving Texas-based conduct, notwithstanding that the some portion of the transactions occurred outside of Texas.  *See, e.g., Baron v. Strassner*, 7 F. Supp. 2d 871, 875-76 (S.D. Tex. 1998) (applying Texas Securities Act even though "not all the stock purchases were consummated in the State of Texas"); *Grant Thornton*, 133 S.W.3d at 361 (rejecting defendant's

---

[9]     *Morrison* was clear that its analysis had nothing to do with the §148 factors (*e.g.*, the place where plaintiffs relied or the place where the misrepresentations were issued), which were irrelevant to its federal statutory analysis:

> [T]he focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States…. Those purchase-and-sale transactions are the objects of the statute's solicitude….*It is our function to give the statute the effect its language suggests, however modest that may be; not to extend it to admirable purposes it might be used to achieve.*

*Id*. at 2884, 2886.

argument that Texas Securities Act applied only to plaintiffs who "bought their shares in Texas"); *Highland Crusader Offshore Partners, L.P. v. Motient Corp.*, 281 S.W.3d 237, 250-52 (Tex. App.—Dallas 2009) (in action asserting statutory, common law and Texas Securities Act claims, Texas had more significant relationship to the dispute than New York even though some misrepresentations were made outside Texas and closing took place in New York).  The Court should do the same here.

## II.    THERE IS NO JUSTIFICATION FOR DISMISSING PLAINTIFFS' CLAIMS UNDER THE DOCTRINE OF *FORUM NON CONVENIENS*

The *forum non conveniens* doctrine is intended to ensure that controversies are adjudicated in the most convenient manner for the parties.  *See  In re Air Crash Disaster near New Orleans*, 821 F.2d 1147, 1162 (5th Cir. 1987) (*en banc*), *vacated on other grounds sub. Nom., Pan Am World Airways, Inc. v. Lopez*, 490 U.S. 1032 (1989) ("the ultimate inquiry [on a *forum non conveniens* motion] is where trial will best serve the convenience of the parties and the ends of justice").  Defendants' request that the Court force Plaintiffs to adjudicate their state law claims in England, and their federal securities claims in Texas, would violate this doctrine in every conceivable respect.

This Court already has exclusive jurisdiction over Plaintiffs' federal securities claims and the Class Plaintiffs' federal securities claims.  Such claims are brought against substantially the *same* Defendants, arise from substantially the *same* alleged misrepresentations, were made during virtually the *same* time period, and will necessarily involve substantially the *same* witnesses, testimony and documents.  Granting Defendants' request to bifurcate these cases into two separate forums would: (1) waste judicial resources; (2) create the risk of conflicting decisions; (3) waste the parties' resources; and (4) contradict Defendants' own arguments that Congress decided that the federal courts should provide a forum for these claims.

18

### A.   English Courts Lack Jurisdiction Over the Entire Action, Which Cannot Be Bifurcated Under *Forum Non Conveniens*

"A foreign forum is available if the ***entire case*** and all parties can come within the jurisdiction of that forum." *Air Crash Disaster*, 821 F.2d at 1165 (emphasis added); *Vasquez v. Bridgestone/Firestone, Inc.*, 325 F.3d 665, 671 (5th Cir. 2003) (same).  Defendants ask this Court to dismiss Plaintiffs' state law claims in favor of an English forum *even though this Court is the **exclusive forum** for Plaintiffs' related U.S. federal securities claims.  Morrison*, 130 S. Ct. at 2877 n.3 (emphasis added).  Because English courts do not provide an alternative forum for such claims, ***all*** of Plaintiffs' claims must be heard by this Court.

### B.   The Private Interest Factors Demonstrate That This Court is the Most Convenient Forum

In determining the most convenient forum, the Supreme Court endorses the consideration of five private interest factors, all of which favor adjudication of Plaintiffs' state law claims in this Court.  These are: (1) the practical considerations that make trial in the forum relatively easy, expeditious and inexpensive; (2) the ease of access to sources of proof in the forum; (3) the availability of compulsory process over witnesses and comparatively lower costs for willing witnesses to attend trial; (4) the enforceability of judgment in the forum; and (5) whether plaintiffs' choice of forum was intended to vex, harass or oppress the defendant.  *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

At least four sets of claims before this Court involve substantially the same Defendants and alleged misrepresentations: (1) Plaintiffs' state law claims, (2) Plaintiffs' federal securities claims, (3) the federal and state law claims of other individual plaintiffs pursuing similar litigation against BP, and (4) the MDL 2185 Class Plaintiffs' federal securities claims.  Given the commonality of all these claims, and the fact that they all implicate the same witnesses,

testimony, and documents, maintaining Plaintiffs' state law claims in this Court is the only way to serve the stated intent of the *forum non conveniens* doctrine:  the convenience of the parties. *See Air Crash Disaster*, 821 F.2d at 1162 (citation omitted).

Conversely, bifurcating the action will unduly inconvenience the parties and the courts on two separate continents by duplicating such efforts.  It will also create the risk that this Court and an English court will render inconsistent rulings regarding the same alleged misrepresentations. Indeed, Defendants conceded the convenience and expedience of having this Court decide all of Plaintiffs' claims when they argued that the Ohio and Oregon Actions, which assert similar state law claims, be transferred ***to this Court***, purportedly because those actions "share[d] allegations" with the federal securities actions in MDL 2185.  *See In re BP plc Sec. Litig.*, MDL Docket No. 2185, Notice of Potential "Tag-Along" Actions, at 2, JPML ECF No. 74.

The number of witnesses amenable to the process of this Court and the cost of transporting witnesses willing to testify also favors this forum.  Four of the seven Individual Defendants reside in this District, and two of the three corporate Defendants are headquartered in Houston.  AC ¶¶ 26-27; CC ¶ 22.  During the Relevant Period, the other Individual Defendants regularly came to this District to conduct business (AC ¶ 18; CC ¶ 22(d)-(i)), and these Defendants are already actively involved in MDL 2179 (*In re Oil Spill by the Oil Rig "Deepwater Horizon" in the Gulf of Mexico on April 20, 2010*) in nearby Louisiana.  All of the Plaintiffs are located in the U.S. and have no connection with England.  AC ¶¶ 22-24; CC ¶¶ 25-30.  Other relevant witnesses employed by BP Exploration and BP America likely reside in this District as well.  Such witnesses clearly fall within the Court's subpoena power.

Defendants have identified just two relevant foreign BP witnesses (Lord Browne and Sir William Castell) who fall outside the Court's subpoena power.  Def. Br. at 45-46.  At best, their

existence is neutral to the *forum non conveniens* inquiry.  *See Trestman v. Microstrategy*, No. 01-0685, 2001 WL 1471707, at *5 (E.D. La. Nov. 15, 2001) (that certain witnesses were not amenable to process in that district was "neutral" to the *forum non conveniens* inquiry where other witnesses were employees of defendants who could be compelled to testify).  ████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

████.

Defendants' argument that "the ease of access to all relevant corporate documents" favors an English court (Def. Br. at 45) also rings hollow.  Defendants have already made accessible to Plaintiffs millions of pages of documents pursuant to a stipulation between the parties that provides access to voluminous and ongoing productions Defendants are making in MDL 2179.  *See* No. 4:12-cv-1256, Dkt. No. 15 at ¶ 5; No. 4:12-cv-1272, Dkt. No. 28 at ¶ 5.[10]  While Plaintiffs may seek additional relevant documents, the volume will be comparatively small when viewed against the MDL 2179 productions and the documents relevant to Plaintiffs' and the

---

[10]      Any theoretical burden on Defendants (none exists) is mitigated by electronic production methods that facilitate transnational discovery, regardless of where such documents are located.  *See In re BP S'holder Deriv. Litig.*, No. 10-md-2185, 2011 WL 4345209, at *8 (S.D. Tex. Sept. 15, 2011) ("The Court will accord appropriate weight to . . . the fact that electronic discovery and other advancements mitigate the inconvenience posed by large-scale document transfers.").

Class Plaintiffs' federal claims.[11]

Finally, the fact that Defendants do not assert that a judgment against them in this Court (even under English law) would be unenforceable, or that Plaintiffs filed their cases in this District to harass Defendants, suggests that there is no reason to disturb Plaintiffs' chosen forum. *Karim*, 265 F.3d at 269 n.14.

### C.   The Public Interest Factors Demonstrate That This Court is the Most Convenient Forum

The public interest factors also favor adjudication of Plaintiffs' state law claims here.[12]

*First*, Defendants previously fought for this Court's jurisdiction, arguing that Congress, in enacting OCSLA, intended to open the federal courts to virtually identical claims raised in the related Ohio Action.  *See* Dkt. No 1 (Notice of Removal) in *Ohio Pub. Emp. Ret. Sys. v. BP plc*, No. 1:12-cv-01291-JG, at ¶ 9.  This Court accepted that argument.  *In re BP plc*, No. 4:10-md-02185, at 7-8 (Dkt. No. 442).  Subsequently, Defendants have used that argument as a basis for removal and transfer *to this District* of other related actions.  *See, e.g., Mondrian Global Equity Fund, L.P., et al. v. BP plc, et al.*, No. 4:12-cv-03621 (Docket No. 1) (Notice of Removal);

---

[11]     The Court's decision in *BP Shareholder Derivative Litigation*—that the forum inquiry favored England as the more convenient forum in which to litigate derivative claims—further suggests Plaintiffs' state law claims should be limited here.  While the Court correctly concluded that, "due to the character of th[e] litigation"—*i.e.*, derivative claims against BP plc's Board of Directors—"the majority of the relevant documents are likely to be located at BP's headquarters in London," 2011 WL 4345209, at *8, discovery in Plaintiffs' Actions, like the MDL 2185 securities Class Action, will focus on conduct that occurred in large part in Houston or nearby Louisiana and involves primarily Texas-resident Defendants.  Moreover, in the derivative action, plaintiffs were pursuing claims under the U.K. Companies Act—not Texas state law and U.S. federal securities law.  Additionally, the case presented "an exception to the general rule of deference [to plaintiffs' chosen forum]… because it 'involve[d] the special problems of forum non conveniens which inhere in derivative actions.'"  *City of New Orleans Employees' Ret. Sys. ex rel. BP P.L.C. v. Hayward*, No. 12-20019, 2013 WL 174251, at *1 (5th Cir. Jan. 16, 2013) (citing *Koster v.(Am.) Lumbermens Mut. Cas. Co.*, 330 U.S. 518, 521 (1947)).

[12]     The public interest factors include "administrative difficulties flowing from court congestion; the local interest in having localized controversies resolved at home; the interest in having the trial . . . in a forum that is familiar with the law that must govern the action; the avoidance of unnecessary problems in conflicts of law, or in application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty."  *Air Crash Disaster*, 821 F.2d at 1162-63.

22

*HESTA Super Fund v. BP plc, et al.*, No. 4:13-cv-00129 (Docket No. 1) (same); *Stichting Penioenfonds Metaal En Techniek, et al. v. BP plc, et al.*, No. 4:13-cv-00069 (Docket No. 1) (same).  By repeatedly advancing this position, and thereby securing the Court's agreement with it, Defendants should be judicially estopped from now arguing that this Court should *refuse* to exercise the *very type* of jurisdiction that Defendants advocated.[13]

*Second*, although "congestion" in this Court is always a concern, this Court will maintain jurisdiction over Plaintiffs' federal securities claims regardless of where their state law claims are tried.  Conversely, it would make no sense to burden two courts, in two separate countries, with adjudicating the identical issues that govern both Plaintiffs' federal and their state law claims.  Further, no citizen of this District would be unfairly burdened, as a single jury would be empanelled to determine Plaintiffs' federal and state law claims.

*Third*, trying Plaintiffs' state law claims in this Court would avoid conflicting decisions by different triers of fact regarding identical issues.  For example, Plaintiffs must establish that Defendants' statements were false and made with intent to defraud to prove their Section 10(b) claims *and* their common law fraud claims.  They will introduce the same evidence at trial on these issues.  Presumably, a single jury would rule consistently on these issues, whereas the potential for inconsistency exists if Plaintiffs are forced to try those claims in different forums.

*Fourth*, Defendants' argument that the public factors favor an English forum because claims arising under the FSMA would require a novel interpretation of that statute (Def. Br. at 46) is the tail wagging the dog.  ***Plaintiffs have not pled an FSMA claim.***  In any event, even

---

[13]    "Judicial estoppel 'prevents a party from asserting a position in a legal proceeding that is contrary to a position previously taken in the same or some earlier proceeding'" and "[t]he purpose of the doctrine is to prevent litigants from 'playing fast and loose' with the courts . . . ."  *Hall v. GE Plastic Pacific PTE Ltd.*, 327 F.3d 391, 396 (5th Cir. 2003).  For judicial estoppel to apply, "[f]irst, it must be shown that 'the position of the party to be estopped is clearly inconsistent with its previous one; and [second,] that party must have convinced the court to accept that previous position.'"  *Id.* (citations omitted).  These requirements are unquestionably met here.

assuming this Court were to apply English law, contrary to Defendants' assertion (Def. Br. at 27), the FSMA is *not* Plaintiffs' exclusive remedy for claims involving the alleged misstatements in BP's 2007, 2008 and 2009 Annual Reports.  These Annual Reports were re-published in U.S. SEC filings or on BP's website and thus the alleged misstatements *are* subject to common law claims.  *See* Lowe Decl. ¶¶ 19-42.  Thus, there will be no need to determine exactly what the FSMA prohibits—Plaintiffs can and will rely on their common law rights.  Moreover, even assuming the FSMA were Plaintiffs' exclusive remedy for the Annual Report claims (which it is not), the statute would apply to just ***three of the 49*** statements remaining at issue.  For the Court to dismiss the entirety of Plaintiffs' state law claims because *three* of the misstatements *might* be subject to the FSMA would subvert, not serve, the interests of justice, particularly given that the courts in this Circuit are more than capable of applying English law.  *See, e.g.*, *Houston Cas. Co. v. Certain Underwriters at Lloyd's London*, 51 F. Supp. 2d 789 (S.D. Tex. 1999) *aff'd sub nom. Houston Cas. Co. v. Certain Underwriters at Lloyd's*, 252 F.3d 1357 (5th Cir. 2001) (applying English law to plaintiff's fraud claim).

*Fifth*, Defendants' assertion that the English courts have a strong interest in applying the FSMA to Plaintiffs' claims (Def. Br. at 46-47) is directly belied by the Act's history and lack of private enforcement.  The relevant FSMA provisions were intended more to act as a regulatory deterrent rather than to provide a basis for civil liability.  *See* Lowe Decl. at ¶ 17.  This is why there has never been a reported decision by an English court applying the statute.  *See id.* at ¶¶ 16-18.  Further, Section 90A and the related statutory scheme have since been *repealed and replaced* by Schedule 10A.  *Id.* at ¶ 15.  English courts have no "great policy imperative to have a ruling on the meaning of Section 90A."  *Id*. at ¶ 18.  It is obsolete*.  Id*.

**III.    DEFENDANTS' CHALLENGES TO THE SUFFICIENCY OF PLAINTIFFS'
ALLEGATIONS FAIL**

**A.**

25









---

16      Under Texas law, fraud by nondisclosure "is a category of fraud."  *NuVasive, Inc.*, *v. Renaissance Surgical Ctr. North L.P.,* 853 F. Supp. 2d 654, 661 (S.D. Tex. 2012).  "[A] claim for fraud by nondisclosure requires there to have been a duty to disclose."  *Id.* at 661.  "A duty to disclose can exist *can* exist absent a fiduciary relationship." *Id.* at 661.  Such a duty arises when:  "one party voluntarily discloses information, which gives rise to the duty to disclose the whole truth"; "one party makes a representation, which gives rise to the duty to disclose new information that the party is aware makes the earlier representation misleading or untrue"; and "one party makes a partial disclosure and conveys a false impression, which gives rise to the duty to speak."  *Solutioneers Consulting, Ltd. v. Gulf Greyhound Partners, Ltd.*, 237 S.W.3d 379, 385 (Tex. App. 2007).  Thus, "under…Texas common law



This Court previously held that the Class Plaintiffs sufficiently alleged that Defendants Hayward, Suttles, BP plc, BP America, and BP Exploration made false and misleading statements with scienter. *See BP*, 843 F. Supp. 2d at 782-84 (Hayward); *BP*, 2013 WL 487011 at *20-22, *29-30 (Hayward); *BP*, 843 F. Supp. 2d at 786-88 (Suttles); *BP*, 843 F. Supp. 2d at 788-91 (BP corporate defendants); *BP*, 2013 WL 487011 at *27 (BP corporate defendants).  Plaintiffs allege the same scienter-related facts.  *See, e.g.*, AC ¶¶ 135, 146-60, 168, 181, 202-13 (Hayward); AC

---

fraud, deceptive half-truths or technically correct partial disclosures that convey a false impression are actionable." *In re Enron Corp. Sec., Deriv. and ERISA Litig.*, 761 F. Supp. 2d 504, 547 (S.D. Tex. 2011).  A similar claim exists under English law.  *See* Lowe Decl. at ¶¶ 58-62.

¶¶ 184, 202-13, 407-12, 432-37 (Suttles); AC ¶¶ 116-222, 407-12, 432-37 (BP); CC ¶¶ 7, 279-90

(Hayward); CC ¶¶ 14, 291-304 (Suttles); CC ¶¶ 5, 13, 103, 124-25, 143, 186-87, 191-93 (BP).



## B.    Plaintiffs Sufficiently Plead Defendants' Intent to Induce Reliance

Under Texas law, the alleged fraudfeasor must have "reason to expect" that persons will

act in reliance on his misstatements in that he must "have information that would lead a

reasonable man to conclude that there is *an especial likelihood* that it will reach those persons

*and will influence their conduct*."   *Ernst & Young v. Pacific Mutual*, 51 S.W.3d 573, 578-81

(Tex. 2001) (citing Restatement (Second) of Torts § 531).[17]   English law is in accord.   *See* Lowe

Decl. at ¶¶ 65-71.

_____

[17]        The fact that this Court previously held that Defendants BP Exploration, BP America, BP plc, Hayward and
Suttles acted with an intent to deceive, *BP*, 843 F. Supp. 2d at 799, supports the conclusion that Defendants' intent
to induce reliance has been pled.   As stated by one commentator, "[i]ntent to deceive—as opposed to intent to
induce action in reliance on a false statement—is not an element [of common law fraud], *although the distinction
between the two is so subtle as to be almost religious*."   49 Tex. Prac., Contract Law § 2.20 Fraud and
misrepresentation—Common law fraud (citing *Wilson v. Jones*, 45 S.W.2d 572 (Tex. Com. App. 1932)); *see also In
re Fortune Sys. Sec. Litig.*, C-83-3348(A)WHO, 1987 WL 34632, at *3 (N.D. Cal. July 30, 1987) ("The requisite
state of mind for liability for common law fraud is indistinguishable from that under § 10b . . . . Common law fraud

Defendants admit that Rule 9(b) does not require Plaintiffs to plead this element with particularity and that general allegations are sufficient.  Def. Br. at 29, 32.  Nor do they dispute that such intent can be pled by reference to allegations of circumstantial facts.  *Spoljaric v. Percival Tours, Inc.*, 708 S.W. 2d 432, 434-35 (Tex. 1986).   Notwithstanding their professed recognition of these pleading standards, however, Defendants assert that Plaintiffs fail to meet their burden because they allege only "conclusory" allegations.  Def. Br. at 28-32.  Defendants are wrong.

Far from relying on boiler-plate allegations, Plaintiffs allege an array of circumstantial facts indicating that Defendants intended to induce Plaintiffs' reliance. ███████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████

████████████████ These facts create a powerful inference that Defendants had every "reason to expect" that their statements were being relied upon.

---

requires actual knowledge of or reckless disregard for the truth of the alleged misrepresentations or omissions and intent to defraud, defined as intent to induce reliance.").  The facts that BP Exploration pled guilty for obstruction of Congress with respect to the post-spill statements, Defendant Rainey was indicted for making such misstatements, and BP paid the SEC $525 million to settle the SEC's claims that Defendants Rainey, Suttles, BP Exploration and BP America made misleading post-spill statements also support an inference of an intent to deceive investors.  *See In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, No. 3:03-cv-00481, 2010 WL 9077875, at *4 (S.D. Tex. Jan. 19, 2010) (circumstantial evidence, including guilty pleas, supported inference of intent to induce reliance).

Especially ████████████████████████████████████████████ ████ and because Plaintiffs were pre-existing shareholders, Defendants Hayward, Dudley and BP had every reason to expect that Plaintiffs would rely on what they said publicly ████████ ████████   Moreover, the nature of all of the Defendants' pre-spill public misstatements, ██████████████████████████████████████ indicates that these statements were intended to induce Plaintiffs' reliance.   Indeed, a large number were specifically directed at BP shareholders, such as Plaintiffs, because they were included in SEC filings, Annual Meeting remarks, and remarks made during teleconferences with investors and analysts.  *See e.g.*, AC ¶¶ 331, 333, 337, 341, 345, 347, 349, 354-55, 357-58, 370, 377, 379, 385, 387, 389-90, 404, 405, 414, 438-41; CC ¶¶ 153, 155, 159, 163, 169, 171, 173, 180-81, 189, 199, 205, 207, 209-10, 218, 220, 222.   Such statements fall squarely within Comment e to Restatement (Second) of Torts Section 531, which expressly recognizes that even "potential investors" are a "class of persons" that a corporate spokesperson should have "reason to expect" will rely on corporate representations.   *See also In re Enron*, 2010 WL 9077875, at *46-48 (applying Restatement § 531 to sustain fraud allegations in connection with open market purchases made in reliance on SEC filings because there was "an especial likelihood that SEC-filed [information]. . . will reach and influence potential investors to purchase the company's stock").[18]  English law applies the same presumption.  *See* Lowe Decl. at ¶¶ 65-75; *see also id.* at ¶¶ 91-97.

---

[18]      *See also Berkowitz v. Baron*, 428 F. Supp. 1190, 1196 (S.D.N.Y. 1977) (threshold requirement of showing that individual was in class of persons defendant should have reasonably expected to rely on statements was satisfied where evidence established that defendant was aware of circumstances indicating that financial statements would be used to attract investors).

In addition, with respect to the misstatements Defendants BP and Hayward made in SEC filings, Restatement Section 536 affords an additional presumption that these Defendants had a reason to expect that Plaintiffs would justifiably rely on them because the statutory requirement of such filings is designed to protect investors.[19]

Similarly, Defendants' contention that BP's Sustainability Reports and Sustainability Reviews are "aimed at all readers with an interest in BP's social, environmental and safety performance" (Def. Br. at 30) does not compel a conclusion that such a group excluded Plaintiffs.  On the contrary, these documents expressly "define 'sustainability' as the capacity to endure as a group by . . . retaining the trust and support of our customers, *shareholders* and the communities in which we operate" and further note that "[o]ur intention in producing [the Sustainability Report] has been to provide a clear and concise account of [the] *issues . . . that we have identified as most important for our audiences*."  BP's 2006 Sustainability Report.  Thus, these BP documents were directly aimed at shareholders.  Moreover, common sense dictates that

---

[19]    In *Ernst & Young*, 51 S.W.3d at 582, the court noted that Restatement § 536's presumption "might apply" to purchasers of securities who, like Plaintiffs here, allege reliance on securities filings made by the corporation in which they invested.  *Id.* at 581-582.  It declined to apply the presumption in that case because the nexus between the accountant-defendant's misconduct and the plaintiff-investor's injury was too remote.  *Id.*  There, an investor who purchased notes of one bank involved in a subsequent two-bank merger brought suit for fraud, following the second bank's bankruptcy, against the second bank's auditor whose audit report had confirmed the second bank's financial strength.  The defendant was found not liable because it had no reason to expect that the plaintiff would rely on the audit report in deciding to buy the notes of the first bank.  *Id.*  Here, by contrast, Plaintiffs' fraud claims are premised on their purchases of BP securities and are asserted against BP—*the company whose public statements are alleged to be false*—thus involving a direct nexus between purchaser-plaintiff and seller-defendant.

Defendants contend that Defendant BP did not intend for shareholders to rely on the IEP and OSRP, Def. Br. at 30, but in the context of BP's "public relations campaign to resuscitate [its] image with respect to process safety," *BP*, 843 F. Supp. 2d at 758, these Defendants had an especial reason to expect that investors, such as Plaintiffs, would do so.  In addition, the IEP and OSRP, like BP's SEC filings on Form 20-F, are statutorily mandated submissions (*see* 43 U.S.C. § 1340(c)(1); 30 C.F.R § 250.219(a)(1)-(2)), therefore triggering the presumption afforded by Restatement § 536.

current or potential investors are keenly interested in BP's environmental and safety performance, as lapses in those areas could (and did) materially impact such investments.[20]

Plaintiffs also adequately pled that Defendants Hayward, Suttles, McKay, Dudley, Rainey, BP, BP Exploration and BP America intended to induce Plaintiffs' reliance when they understated the amount of oil gushing into the Gulf. BP faced a post-spill existential threat due to the uncapped flow of oil and its ever-increasing exposure to cleanup costs and fines under federal environmental statutes. *See, e.g.*, AC ¶¶ 211, 436; CC ¶¶ 291-304, 312; *see also BP*, 843 F. Supp. 2d at 788 (finding that BP's spill response team head intended to deceive investors via his post-spill understatements of the oil flow rate at a time "where every passing second affected (and increased) the total damage to the Gulf"); *id.* at 773 (pleaded facts support allegations that "BP was lowballing the estimate numbers in an attempt to keep stock prices from falling"). There is a strong, common-sense inference that these misrepresentations were made with the express intent to induce shareholders such as Plaintiffs to hold and/or add to their positions, thereby artificially counteracting the enormous downward pressure on BP's stock price. *See* AC ¶¶ 210-213, 216-222, 407-412, 424, 432-433 (concerning BP's settlement with the SEC, its guilty plea agreement with the Department of Justice, and Defendant Rainey's indictment); CC ¶¶ 305-12 (same).

Plaintiffs have done far more than make conclusory allegations. They have alleged circumstantial facts that indicate that each of the Defendants individually intended for Plaintiffs to rely on their misstatements. Indeed, in one of the decisions on which Defendants' expert

---

[20]    While Defendants assert that two of these documents state they "must not be relied upon … in connection with any investment decisions" (Def. Br. at 30), one cannot disclaim liability for fraud through a unilateral, generalized disclaimer. *See, e.g., Allen v. Devon Energy Holdings, L.L.C.*, 367 S.W.3d 355, 368, 382 (Tex. App.—Houston [1st Dist.] 2012) ("Fraud vitiates whatever it touches"; finding that liability was not adequately disclaimed) (citation and quotation marks omitted); *Cowden v. Cowden*, 143 Tex. 446, 452 (Tex. 1945) ("A man cannot disclaim his liability."). Similar principles apply under English law. *See* Lowe Decl. at ¶ 64.

Moore relies, *Exxon Corp. v. Emerald*, 348 S.W.3d 194 (Tex. 2011), the Texas Supreme Court held that *facts* even less compelling than the allegations at issue here were sufficient to *prove* an intent to induce reliance.  In that case, defendants made misstatements in regulatory filings concerning the way in which oil wells had been closed and there were direct meetings between defendant and plaintiffs concerning plaintiff's possible re-opening of the wells.  The court held that these facts were sufficient *to support a jury verdict* that defendant intended to induce plaintiff's reliance on the regulatory filings, even though such filings were not explicitly directed to the plaintiffs.  If these *facts* were sufficient to *prove* an intent to induce reliance, Plaintiffs' allegations are easily sufficient to plead this element.

Indeed, the other Texas decisions that Moore relies upon (*see* Moore Decl. at ¶¶ 67-68) further demonstrate the sufficiency of Plaintiffs' allegations.  Neither *Ernst & Young*, 51 S.W.3d 573, nor *Rio Grande Royalty Comp., Inc. v. Energy Transfer Partners, L.P.*, 786 F. Supp. 2d 1202 (S.D. Tex. 2009) involved the situation at issue here: misstatements by corporate defendants and their officers/directors directly to shareholders.  Instead, in those cases, plaintiffs argued that even though defendants' misstatements were not directed to them, defendants nonetheless intended to induce their reliance because industry practice suggested that such reliance was likely.  In rejecting these arguments, the courts in *Ernst & Young* and *Rio Grande* demonstrate that the relationship between plaintiffs and defendants was too attenuated to suggest that defendants intended to induce plaintiffs' reliance.  Here, in stark contrast, Plaintiffs have alleged that ███████████████████████████████████████████████████ ████████████████████████████████████  Defendants' additional misstatements were explicitly targeted at investors, such as Plaintiffs. ████████████████████████████████

36

██████████████████████ *Ernst* and *Rio Grande* demonstate that Plaintiffs' allegations are more than sufficient.[21]

For all these reasons, and because questions about Defendants' intent are best left to the trier of fact, *Spoljaric*, 708 S.W.2d at 434, Plaintiffs' allegations are more than sufficient.

### C.    Plaintiffs Sufficiently Plead Reliance on Defendants' Misstatements

Texas common law fraud requires proof of actual and justifiable reliance. *Grant Thornton* v. *Prospect High Income Fund, ML CBO IV (Cayman), Ltd., et al.,* 314 S.W.3d at 913, 923 (Tex. 2010). "[U]nder Texas law a fraud victim's reliance on a material misrepresentation or omission can be inferred from circumstantial evidence …." *Enron*, 2010 WL 9077875, at *45 (citing *In re Mounce*, 390 B.R. 233, 248 (W.D. Tex. 2008)).   "Moreover, the material misrepresentation or omission need not be the only inducer of the plaintiff's course of action, but it must have a material influence on the plaintiff's conduct and be a substantial factor in bringing about his action." *Enron*, 2010 WL 9077875, at *45 (citing, *inter alia*, *Marburger v. Seminole Pipeline Co.*, 957 S.W.2d 82, 86 (Tex. App. 1997)).   English law is generally in accord. *See* Lowe Decl. at ¶¶ 87-97.

Defendants overstate Plaintiffs' pleading burden when they assert that Plaintiffs must advance particularized allegations that each of them relied on each of the alleged misstatements. Def. Br. at 19. Numerous Texas decisions hold that "Rule 9(b) does not require that Plaintiffs plead reliance with particularity or state how they specifically relied on each statement."

---

[21]    The English authorities cited by Defendants are in accord.  Def. Br. at 30.  *Barry v. Croskey* addressed the propriety of imposing on a company the director defendants' intent to induce reliance when the company was not informed of and had no knowledge of the directors' fraudulent scheme.  (1861) 2 J. & H. 1 at 27-28 (Eng.).  *Possfund Custodian Trustee Ltd. v. Diamond; Parr v. Diamond*, supports Plaintiffs' position as the court left open the possibility that those individuals responsible for issuing a prospectus could be liable to aftermarket purchasers for misstatements contained in a prospectus.  [1996] 1 W.L.R. 1351 (Eng.).  Here, Plaintiffs have alleged false and misleading statements that are analogous to prospectuses in that they were targeted at investors.

*Timberlake v. Synthes Spine Co.*, No. V-08-4, 2009 WL 926990, at *6 (S.D. Tex. Mar. 31, 2009); *accord Enron*, 2010 WL 9077875, at *46.   In fact, Texas courts have noted that allegations of reliance are inherently conclusory.  *See Steiner v. Southmark Corp.*, 734 F. Supp. 269, 275 (N.D. Tex. 1990), *clarified,* 739 F. Supp. 1087 (N.D. Tex. 1990) (It is "inherently true" that reliance allegations are "conclusory" because *"[o]ne either relies on a particular statement or one does not, there is no middle ground."*); *In re Compaq Sec. Litig.*, 848 F. Supp. 1307, 1312 (S.D. Tex. 1992) (same); *Enron*, 2010 WL 9077875, at *46 (same).   As a result, reliance is "ordinarily a question for the fact-finder" and "it is not proper matter for dismissal on the pleadings."  *Celanese Corp. v. Coastal Water Authority*, 475 F. Supp. 2d 623, 638 (S.D. Tex. 2007) (citations omitted).  *See also Enron*, 2010 WL 9077875, at *20 (summarizing plaintiffs' position and decisions that "Texas courts have uniformly treated the issue of justifiable reliance as a question for the fact finder" and collecting cases), *46 (adopting plaintiff's position).[22]

Plaintiffs are institutional investors who were predominantly pre-existing shareholders of BP (AC ¶¶ 22, 24; CC ¶¶ 25-30, 339, 346, 353, 360, 367, 374) ███████████████████

████████████████████████████████████████████████████████

████████████████████████████████████████████████████████

---

[22]     At most, the decisions Defendants rely upon (Def.  Br. at 19-20) indicate that a plaintiff must plead some circumstantial facts that create an inference of plaintiff's reliance.  *See Sanchez v. Liggett & Myers, Inc.*, 187 F.3d 486, 491 (5th Cir. 1999) (complaint alleging only that plaintiff "had no way to determine the falsity of these representations and material omissions, and that he reasonably relied upon such misrepresentations to his detriment" was insufficient); *Amzak Corp.* v. *Reliant Energy, Inc.*, No. 03-cv-0877, 2004 WL 1882482, at *6 (N.D. Ill. 2004) (complaint that did not contain any allegation of reliance was rejected); *In re Enron Corp. Sec., Deriv. & "ERISA" Litig.*, 490 F. Supp. 2d 784, 812-13 (S.D. Tex. 2007) (rejecting entirely conclusory reliance allegations and noting absence of direct contact between plaintiff and defendant); *Gray v. Bayer Corp.*, No. 08-4716 (JLL), 2009 WL 1617930, at *3 (D.N.J. June 9, 2009) (reliance not pled where plaintiff did not allege what statements she heard); *Anderson v. Thompson*, No. 1:07-cv-100, 2008 WL 820024, at *6 (E.D. Tenn. Mar. 25, 2008) (pleading reliance requires at least some allegations create inference of same); *Baxter v. A.R. Baron & Co.*, 1995 WL 600720, at *4 & n.5 (allegations of stock trades, standing alone, insufficient to plead reliance).  *Erica P. John Fund, Inc.* v. *Halliburton* dealt with the entirely unrelated issue of whether securities fraud plaintiffs must prove loss causation at the class certification stage.  131 S. Ct. 2179, 2183 (2011).

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████████████████████████████

███████████████████████  Following the issuance of Defendants' misleading

statements and in reliance thereon, Plaintiffs purchased BP securities throughout the Relevant

Period.  AC ¶¶ 486, 493, 508; CC ¶¶ 338, 340, 345, 347, 352, 354, 359, 361, 366, 368, 373, 375.

These alleged facts demonstrate, for purposes of pleading, Plaintiffs' reliance.

Plaintiffs' reliance allegations are even more persuasive than those deemed sufficient in

*Enron*.  There, as here, the plaintiffs were "already existing [] shareholders" who "monitored

their investment," who "kept aware of ongoing market information about the company," and

who alleged that they relied on "SEC-filed documents," "their historic position" in the

company's stock, and the "continued optimistic reported outlook" for the company in purchasing

Enron stock.  *Enron*, 2010 WL 9077875, at *46-48; *see also Prospect High Income Fund v.

Grant Thornton, LLP*, 203 S.W. 3d 602, 615-16 (Tex. App.—Dallas Oct, 18, 2006), *reversed in

part on other grounds, Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W. 3d 913

(Tex. 2010) ("Unlike the investor in *Pacific Mutual*, appellants already owned Epic bonds.

Thus, they are not merely members of a large universe of potential investors.").[23]  The court

found that the *Enron* plaintiffs' "continuing purchases" in the subject stock "evidenced" their

---

[23]     *See also Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1187 (C.D. Cal. 2011)
("Allstate has met its burden to plead actual reliance by stating that it 'received, reviewed, and relied upon the
Offering Materials' and that 'but for the misrepresentations and omissions in the Offering Materials, Allstate would
not have purchased or acquired the Certificates.").

"reli[ance] on the absence of truthful information." *Enron*, 2010 WL 9077875, at *48.  In addition, the *Enron* plaintiffs, like Plaintiffs here, alleged that "had they known the truth about [the company's true] condition, they would not have purchased additional [] securities." *Id.* at *47; *see also* AC ¶¶ 485, 492, 502, 507; CC ¶¶ 342, 349, 356, 363, 370, 377.[24]



---

[24]      Other decisions relied upon by Defendants are in accord.  *See Enron* 490 F. Supp. 2d at 784, 813 .(complaint dismissed because plaintiffs alleged merely that a single plaintiff had received one of the allegedly misleading reports and the plaintiffs further claimed to have relied on positive comments regarding bonds in which they did not invest); *Club Escapade 2000, Inc. v. Ticketmaster, L.L.C.*, No. EP-11-CV-166, 2011 WL 5976918, at *4 and n.2 (W.D. Tex. Nov. 29, 2011) (complaint dismissed because plaintiff did not allege **any** facts indicating reliance and pled facts that suggested the opposite); *Sullivan v. Leor Energy LLC*, No. H-05-3913, 2006 WL 2792909, at *7 (S.D. Tex. Sept. 27, 2006) (fraud claim was "no more than a restatement of the contract claim with a reference to the fraud element"); *Perry v. Cohen,* 285 S.W.3d 137, 145-148 (Tex. App. 2009) (did not dismiss any claims over failure to plead actual reliance).  Moreover, Defendants' reliance on *In re Enron Corp. Sec. Derivative & "ERISA" Litig.*, 540 F. Supp. 2d 800 (S.D. Tex. 2007) and *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256 (3d Cir. 2006) is misplaced, as these cases address reliance in the context of a claim for a violation of § 18 of the Exchange Act.  The more relevant authorities are *Timberlake*, 2009 WL 926990, and *Enron*, 2010 WL 9077875, which address the applicability of Rule 9(b) to reliance in the context of Texas common law fraud.

███████████████████████████████████████

███████████████████████████████████████

███████████████████████████████████████

████████████████████████████████████ These allegations of

indirect reliance, especially when coupled with Plaintiffs' other allegations, are sufficient for

purposes of pleading. *See Klein v. O'Neal, Inc.,* No. 7:03-cv-102-D, 2008 WL 2152030, at *5

(N.D. Tex. May 22, 2008) ("[c]ourts [applying Texas law] have held that *indirect* reliance is

sufficient to support a fraud claim where the misrepresentation was made to an intermediary);

*Hawkins v. Upjohn Co.,* 890 F. Supp. 609 (E.D. Tex. 1994) ("[T]he allegation of indirect

reliance is clear.   Plaintiffs assert that the FDA relied on defendants' representations in

permitting the distribution of the drugs in question within the United States and that plaintiffs

relied on the FDA's assessment as to the drugs' safety in choosing to use the drugs.  Such

indirect reliance is sufficient to state a claim of fraud.").

> **D.    Defendants' Challenges to Certain Alleged Misrepresentations ██████████ ████████████ Also Fail**

The Court should reject Defendants' arguments for dismissal of Plaintiffs' claims with

respect to several specific misstatements.   Def. Br. at 33-36, 56-63.   By way of overview,

Defendants challenge only isolated portions of these statements even though Plaintiffs allege,

and the Court has held, that it is the other portions that were misleading.  Moreover, even if, with

respect to any particular statement, the Court finds falsity but no scienter, then such statement(s)

are viable under Plaintiffs' negligent misrepresentation claims.

BP's January 16, 2007 press release is actionable because it addressed BP's historical

progress in implementing the Baker Panel recommendations, expressly asserting that "BP

***already has taken*** a number of actions which align with the recommendations of the [Baker

41

Panel].”  AC ¶ 331; CC ¶ 153 (emphasis added).  Plaintiffs allege that this statement was false

and misleading, because, at the time it was issued, BP had *not* taken “a number of actions” to

implement the Baker Panel recommendations, rendering this statement a misrepresentation of

historical and/or present fact.[26]  AC ¶ 332; CC ¶ 154.   Additionally, even if it was somehow a

statement of future intent, Plaintiffs adequately allege that Defendants had no intention of

fulfilling the statement at the time that they made it.[27]   Either way, Plaintiffs have pled

“extraordinary” falsity, rendering BP’s corporate scienter adequately pled at this stage.  *BP*, 843

F. Supp. 2d at 788-91.

Defendant Malone’s Congressional testimony on May 16, 2007 is also actionable.

AC ¶¶ 335-36; CC ¶¶ 157-58.  As regards falsity, his statement that “I continue to meet with

employees to reinforce my expectations of them: that they must ensure our operations are safe,

that they understand they have both a right and a responsibility to shut down any process they

feel is unsafe or operationally unsound, and that they are encouraged to raise concerns on any

issue . . . BP does not tolerate retaliation against workers who raise safety concerns,” is a

statement of then-historic and then-present fact—either Malone was meeting with BP America

employees and alerting them to these expectations or he was not.  The Court already held that

this statement was false and misleading.  *See BP*, 843 F. Supp. 2d at 765-66 (“the alleged facts

---

[26]     The Court has already found similar statements to be actionable, without regard to whether they concerned BP’s efforts at refineries specifically or its operations more generally.  *See BP*, 843 F. Supp. 2d at 757-758 (“We continue to implement the roadmap provided to ourselves and the industry by …the Baker Panel” and “We are making good progress in addressing the recommendations of the Baker Panel and have begun to implement a new [OMS] across all of BP’s operations.”).

[27]     Under Texas law, “[a] promise of future performance constitutes an actionable misrepresentation if the promise was made with no intention of performing it at the time it was made.”  *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009) (citations omitted); *see also In re BP p.l.c. Sec. Litig.*, 843 F. Supp. 2d at 759 (“A repeated utterance, even on a promise of progress, can become misleading where repetition becomes a statement of current and ongoing compliance”).  A similar framework applies under English common law.  *See* Lowe Decl. at ¶¶ 51-57.

sufficiently, *even forcefully*, establish that BP was *knowingly* retaliating against workers who reported safety concerns even while denying any retaliation") (citation omitted).

Similarly, Defendant Malone's comments in an October 25, 2007 press release falsely asserted as a matter of historical fact that "in the months and years since [the Texas City] violations occurred, we have made real progress in the areas of process safety performance and risk management." AC ¶¶ 341-42; CC ¶¶ 163-64. The Court previously found this statement to be false and misleading. *BP*, 843 F. Supp. 2d at 757-759 and n.12. Defendants' attempt to draw the Court's attention to other parts of Malone's testimony should be disregarded. Plaintiffs are not pursuing claims based on the portions of the press release that the Court already dismissed for failure to plead falsity.

Defendant Rainey's November 19, 2009 Senate testimony regarding potential discharges from oil and gas drilling included misstatements of historical facts when he falsely asserted that "All of [BP's] production facilities have contingency plans that identify the procedures, response equipment, and key personnel needed for responding to incidents and that "BP's fiber optic network in the Gulf… allow[ed] [it] to monitor well pressures in real time" from its Houston facilities. *See* AC ¶¶ 374-376; CC ¶¶ 194-195. The Court already found these portions of Rainey's testimony to be false and misleading. *See BP*, 843 F. Supp. 2d at 762-63, 781.[28]

Defendant Dudley's assertion on May 14, 2010 that only 5,000 barrels of oil were leaking into the Gulf and that public estimates of 70,000 barrels/day were "not accurate at all," as well as Defendant McKay's May 19, 2010 Congressional testimony reiterating the 5,000 barrel per day

---

[28] While the Court previously found that the plaintiffs in the NY/OH class action failed to adequately plead scienter for Rainey, Plaintiffs submit that the indictment filed by the U.S. Department of Justice on November 14, 2012, wherein Rainey was charged with Obstruction of Congress and False Statements and which was predicated upon similar facts as those to which BP Exploration pled guilty, provides grounds for the Court to reconsider its prior holding with respect to Rainey's scienter. *See generally* AC ¶ 221; CC ¶¶ 307-09.

figure and stating "[t]hat is our best estimate," are clearly actionable misstatements under Plaintiffs' Section 10(b) and state law theories of liability.  AC  ¶¶ 418, 422; CC ¶ 226. [29]  Not only were these statements contradicted by numerous internal BP reports, *see* AC ¶¶ 407, 413, 423-24, 432-37; CC ¶¶ 226-27, 291-292, 294, 296-99, 301, they also mirror statements that the Court previously found to "support Plaintiffs' contention that BP was lowballing the estimate numbers in an attempt to keep stock prices from falling" and "call into question the truth of these [ ] estimates."  *BP*, 843 F. Supp. 2d at 773.  Moreover, the inference of Dudley and McKay's scienter is even stronger than it was at the time when the Court ruled on the Class Plaintiffs' allegations, in light of BP's settlement with the SEC assessing a $525 million penalty and BP E&P's criminal guilty plea for obstruction of Congress, in both cases due to Defendants' public reiteration of the 5,000 barrels per day figure.

### E.    Plaintiffs Sufficiently Plead A Claim For Negligent Misrepresentation

Plaintiffs adequately allege that their relationship with Defendants was sufficiently close to give rise to negligent misrepresentation liability.  ████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████   Defendants also do not dispute the fact that most of the Plaintiffs were pre-existing shareholders of BP at the time the misrepresentations were made.  AC ¶¶ 22, 24; CC ¶¶ 339, 346, 353, 360, 367, 374.  These concessions, coupled with the allegations discussed in Part III.B, are

---

[29]    "[E]ven if an expression is an opinion, '[t]here are exceptions to [the] general rule'" that opinions are not actionable as misrepresentations of fact.  *Italian Cowboy Partners, Ltd. v. Prudential Ins. Co. of Am.*, 341 S.W.3d 323, 337-38 (Tex. 2011) (citing *Trenholm v. Ratcliff*, 646 S.W. 2d 927, 930 (Tex. 1983)).  For example, "when an opinion is based on past or present facts, an action for fraud may be maintained."  *Id.*; *see also Transport Ins. Co. v. Faircloth*, 898 S.W.2d 269, 277 (Tex. 1995).  English common law is in accord.  *See* Lowe Decl. at ¶¶ 51-57.

more than sufficient to plead that Defendants owed and breached a duty to Plaintiffs.  *See Prospect High Income Fund v. Grant Thornton, LLP*, 203 S.W.3d 602, 616 (Tex. App. 2006), *rev'd in part sub nom. Grant Thornton LLP v. Prospect High Income Fund*, 314 S.W.3d 913 (Tex. 2010) (stating that the existing bondholders were "not merely members of a large universe of potential investors" and concluding that "there is . . . a genuine issue of material fact regarding whether [existing bondholder] appellants qualify for inclusion within the limited class entitled to sue.").  *See also* Lowe Decl. at ¶¶ 74-75 (relationship between a shareholder and a company can give rise to a duty of care).  Indeed, although these allegations indicate that Defendants had "*actual* knowledge" of the Plaintiffs, such knowledge is not even necessary if the defendant (as is the case here) should have had this knowledge.  *Scottish Heritable Trust, PLC v. Peat Marwick Main & Co.*, 81 F.3d 605, 614 (5th Cir. 1996) (emphasis in original) (citing *Blue Bell, Inc. v. Peat-Marwick, Mitchell & Co.*, 715 S.W.2d 408, 411 (Tex.-App. Dallas 1986)).  *See also* Moore Decl. at ¶ 78; Lowe Decl. at ¶¶ 80-83.

Any specific misrepresentations with respect to which the Court determines that there is falsity, but not scienter, remain actionable under Plaintiffs' negligent misrepresentation claims.

## IV.   PLAINTIFFS' STATE LAW CLAIMS ARE NOT BARRED BY THE DORMANT COMMERCE CLAUSE

Accepting Defendants' argument that the dormant Commerce Clause requires dismissal of Plaintiffs' claims would be unprecedented.

Plaintiffs seek to hold Defendants accountable for making misleading statements concerning the deepwater drilling operations of Houston-based BP Exploration in the Gulf of Mexico.  Two of the three corporate Defendants are residents of Texas.  The third corporate Defendant (BP plc) conducts 40% of its operations in Texas and the other U.S. states.  *See* discussion *supra* at Part I.  Plaintiffs' claims do not seek to regulate foreign commerce, nor do

45

they in any way interfere with England's ability to regulate the London Stock Exchange.  They seek to remedy the issuance of misrepresentations, primarily in the U.S.

No court has ever dismissed a state common law or general anti-fraud statute claim on the ground that it violated the dormant Commerce Clause.  Indeed, it is well-settled that such claims promote, rather than, burden commerce.  In fact, in *Morrison*, the Supreme Court openly acknowledged that such claims were not subject to the territorial limitation found present in the statutory language of Section 10(b).  130 S. Ct. at 2886-87.  Moreover, the U.K. expressly recognized in its *amicus* submission in *Morrison* that such claims would not impinge on its sovereignty.  U.K. Amicus Curiae Br. at *37-38.  Defendants ask this Court to ignore decades of federal and state jurisprudence and become the first to prevent a state from providing a remedy to those injured by corporate officials who mastermind a fraudulent scheme from within its borders.  That request should be summarily rejected.

### A.    Defendants' Argument Ignores Decades of Dormant Commerce Clause Jurisprudence

To determine whether a statute violates the dormant Commerce Clause, the Fifth Circuit employs a two-tiered approach.  *See C.A. Dickerson v. Bailey*, 336 F.3d 388, 396 (5th Cir. 2003). Pursuant to the first tier, the court determines whether the statute at issue discriminates against interstate or foreign commerce.  *CTS Corp.* v. *Dynamics Corp. of Am.*, 481 U.S. 69, 87 (1987); *Cooper v. McBeath*, 11 F.3d 547, 553 (5th Cir. 1994).  Under the second tier, when "a statute regulates in an evenhanded manner and had only [in]direct [sic] effects on interstate commerce, [the courts] assess 'whether the State's interest is legitimate and whether the burden on interstate commerce clearly exceeds the local benefits.'"  *Id*. (quoting *Brown-Forman Distillers* v. *N.Y. State*, 476 U.S. 573, 579 (1986) (citing "flexible balancing approach" first articulated by *Pike* v. *Bruce Church, Inc.*, 397 U.S. 137, 142 (1970))).  Under *Pike*'s balancing test, a regulation is

46

valid unless "the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Pike*, 397 U.S. at 142.

Nowhere in their brief do Defendants acknowledge—much less address—the Fifth Circuit's two-tier analysis.  This is not surprising given that the text of the Commerce Clause is focused on the power to "regulate," and the resulting dormant Commerce Clause jurisprudence is focused on state legislative "regulations" on commerce outside the state (e.g., anti-takeover regulations).  Nevertheless, Defendants argue that Plaintiffs' state law claims must be dismissed because Plaintiffs' securities transactions were ultimately effectuated on the LSE.  Plaintiffs' state law claims, however, do not seek to hold Defendants liable for anything they did or did not do on the LSE; rather, they seek to hold Defendants accountable for making misleading statements, primarily in the U.S.

Courts routinely hold that such claims do not violate the Commerce Clause because common law claims for fraud and negligent misrepresentation, and general purpose anti-fraud statutes (such as the Texas Business and Commercial Code Section 27.01), do not burden interstate or foreign commerce—***they improve and advance it.***  *Chrysler Capital Corp.* v. *Century Power Corp.*, 800 F. Supp. 1189 (S.D.N.Y. 1992), for example, involved an unsuccessful challenge to the constitutionality of Arizona's anti-fraud blue-sky law as an alleged interference with interstate commerce.  The statute was found to facilitate commerce because it encouraged honest commercial transactions, erecting no barriers to interstate commerce:

> [T]he Arizona anti-fraud statute is not preventative, but remedial in nature.  [It] imposes no additional requirements on persons engaged in interstate commerce, nor does it impede *any* interstate transactions.  Rather, like any tort recovery statute, it merely provides a post-hoc remedy for persons aggrieved by allegedly unlawful conduct.  Thus, in no sense does it prevent or burden interstate commerce.

*Id*. at 1195. (emphasis in original).  Significantly, the *Chrysler* court distinguished those opinions

invalidating preventative statutes seeking the actual projection of state regulatory authority from post-transaction anti-fraud remedial statutes like those at issue here. *Id.* ("Unlike the provisions at issue in *Media Products*, *Goodrich*, and *Edgar*, the Arizona anti-fraud statute is not preventative, but remedial in nature.").[30]

It is for this reason that although some cases hold state legislative regulatory action invalid under the dormant Commerce Clause, there are "none invalidating liability founded on principles of common law." *Buzzard* v, 966 F.2d at 784 n.9; *see also In re Nat'l Century Fin. Enters., Inc. Inv. Litig.*, 755 F. Supp. 2d 857, 877-78 (S.D. Ohio 2010) (recognizing that under *Pike*, "it would appear that [the plaintiffs'] case is even the more compelling than the one in *CTS* because remedial regulation of fraud improves commerce, not burdens it, whereas Indiana's regulation of control-share acquisitions put [sic] some burden on interstate commerce."); *Chrysler Capital Corp.*, 800 F. Supp. at 1194 ("San Diego fails to cite any case in which a remedial anti-fraud statute was found to burden interstate commerce. Rather, the cases upon which San Diego relies all concern Commerce Clause challenges to state statutes of a regulatory nature which tended to burden otherwise lawful interstate transactions.").

Accordingly, state common law claims like the ones asserted here do not violate the dormant Commerce Clause. *See Camden County Board of Chosen Freeholders v. Beretta U.S.A. Corp.*, 123 F. Supp. 2d 245, 254 (D.N.J. 2000) (refusing to dismiss common law claims on Commerce Clause grounds); *Crowley* v. *Cybersource Corp.*, 166 F. Supp. 2d 1263, 1272 (N.D. Cal. 2001) (following *Buzzard* and *Camden County* in "declin[ing] to hold that [plaintiff's] state common law claims fail under the dormant commerce clause."); *Commonwealth of Pa.* v. *TAP*

---

[30]   *A.S. Goldmen & Co., Inc.* v. *New Jersey Bureau of Securities*, 163 F.3d 780 (3d Cir. 1999), cited by Defendants in footnote 34 of their brief, is similarly inapposite. There, the issue was an administrative enforcement order issued by a state securities regulator preventing the sale of unregistered securities in New Jersey to investors in other states. *Id.* The Court found that the state regulator's order did not violate the dormant Commerce Clause. *Id.*

*Pharm. Prods., Inc., et al.*, 36 A.3d 1197, 1234 (Pa. Comm. Ct. 2011) (Commerce Clause is directed at legislative power); *City of Boston* v. *Smith & Wesson Corp. et al.*, No. 199902590, 2000 WL 1473568, at *12 (Mass. Supp. Jul. 13, 2000) ("The standard for analysis under the Commerce Clause has its focus on positive law-statutes or regulations" and, as such, does not apply to common law claims).[31]

Indeed, as Defendants operate in Texas and committed fraud in Texas, Texas has an unquestionably legitimate interest in remedying defendants' misconduct. *See*, *e.g.*, *Industrial Indem. Co.* v. *Chapman and Cutler*, 22 F.3d 1346, 1352 (5th Cir. 1994) ("Texas also has an overriding interest in governing the conduct of persons situated within its borders. Moreover, persons within Texas, regardless of whether or not they are citizens, have a right to rely on and to act in conformity with Texas' laws. Hence, Texas has a real interest in seeing its laws applied."); *In re Enron Corp. Sec, Derivative & ERISA Litig.*, No. MDL-1446, 2007 WL 789141, at *2 (S.D. Tex. Mar. 12, 2007) ("Texas has a strong policy interest in regulating businesses that voluntarily chose to do business within its borders    . . . If [JPMorgan Chase] made omissions in Texas, then Texas has an interest in seeing the injuries caused by those omissions are remedied.") (citations omitted) (brackets in original); *Rio Grande Oil Co. v. State*, 539 S.W.2d 917, 921 (Tex. App. 1976) (rejecting defendants' argument that "since there were no purchasers within Texas, there is no evidence that Texas could have suffered irreparable injury" because "[a] state is damaged if its citizens are permitted to engage in fraudulent [securities] practices

---

[31]    *BMW of North America v. Gore* is wholly inapposite. There, the Court was concerned with a jury's "grossly excessive" punitive damage award attempting to alter BMW's nationwide policy and punish BMW for conduct that was lawful in other states. 517 U.S. 559 (1996). Unlike in *BMW*, plaintiffs are not attempting to punish defendants for conduct that is lawful abroad, nor are plaintiffs attempting to deter conduct that is lawful in other jurisdictions. In any event, *BMW* is better viewed as a due process rather than a commerce clause case. *See*, *e.g.*, *City of Boston*, 2000 WL 1473568, at *12 n.55 ("While the Supreme Court discussed notions of fairness enshrined in "constitutional jurisprudence," the Court appeared to rely on Due Process.").

even though those injured are outside its borders."); *see also Chrysler Capital Corp.*, 800 F. Supp. at 1192 (Arizona has interest in "preventing it from being used as a base of operations for crooks marauding outside the state.").[32]

### B.     Neither *National Century* Nor *Morrison* Support Defendants' Argument

Instead of reconciling this mountain of jurisprudence with their revolutionary constitutional theory, Defendants baldly assert that Plaintiffs' claims still violate the dormant Commerce Clause because that clause contains a *per se* prohibition on direct regulation of foreign commerce and BP's securities traded in London.   Def. Br. at 48.   Defendants are incorrect.   As explained above, Plaintiffs' claims do not "regulate" foreign commerce; rather, they remediate the making of misrepresentations, primarily in the U.S.   Moreover, the Ohio court decision that Defendants primarily rely upon actually indicates that Plaintiffs' claims are entirely constitutional.

The *per se* prohibition on regulation of foreign commerce has its origins in a handful of Supreme Court decisions from the 1980s where statutes regulating conduct occurring wholly outside a state's border were struck down with the goal of mitigating the regulatory chaos created by state "affirmation laws" and "anti-takeover laws."   *See Edgar* v. *MITE Corp.*, 457 U.S. 624 (1982); *Brown-Forman Distillers Corp.* v. *New York State Liquor Authority*, 476 U.S. 573 (1986); *Healy* v. *Beer Inst.*, 491 U.S. 324 (1989). [33]   In *Brown* and *Healy*, for example, the

---

[32]      Texas courts routinely hear Texas tort claims, including securities fraud claims, where some of the relevant events occur outside the state.  *See, e.g., Grant Thornton*, 133 S.W.3d at 361 (rejecting defendant's argument that Texas Securities Act applied only to plaintiffs who "bought their shares in Texas" because, *inter alia*, fraudulent statements were issued in Texas); *Baron*, 7 F. Supp. 2d at 875-76 (applying Texas Securities Act even though "not all the stock purchases were consummated in the State of Texas"); *Dow Chemical Co.* v. *Alfaro et al.*, 786 S.W.2d 674 (Tex. 1990) (personal injury action brought under state law by foreign plaintiff for injury sustained in Costa Rica as a result of pesticides supplied by company headquartered in Houston and by Michigan company conducting extensive operations in Texas).

[33]      "Affirmation laws" require distributors to sell certain products in-state at the same price as they do out-of-state, and thereby effectively fix the prices that a distributor can charge in out-of-state markets.   Anti-takeover

Supreme Court struck down ***preventative*** state regulations that directly controlled product pricing in other states.[34]

Defendants cannot locate a single decision (because there are none) that extends this doctrine to strike down state common law or general purpose anti-fraud claims, even when the fraud resulted in a foreign securities trade.  Only one decision extends the doctrine to prohibit a state from applying its anti-fraud blue sky laws, *Nat'l Century*, 755 F. Supp. 2d 857, but the rationale in that decision undermines Defendants' argument.

*Nat'l Century* did not strike down any common law claims.  In that case, the court held that the dormant Commerce Clause prevented an out-of-state plaintiff from applying Ohio's blue sky law to an out-of-state underwriter defendant with respect to a transaction that occurred out-of-state.  The underwriting occurred outside Ohio, the closing and delivery of notes from the issuer to the underwriter occurred outside Ohio, and the sales of securities occurred outside Ohio. 755 F. Supp. 2d at 860-63.  Ohio's only connection to the alleged fraud by the underwriter was the fact that the securities themselves were issued by an Ohio corporation.  *Id.*  On this basis, the Court held that Ohio's connection to the misconduct was too attenuated and that application of Ohio law constituted an impermissible regulation of conduct outside Ohio.  *Id.*  Here, by

---

statutes, on the other hand, protect corporations from hostile tender offers made by companies seeking to take control of local 'target' corporations.

[34]     As aforementioned, the Fifth Circuit has not adopted a *per se* extraterritorial prohibition.  Instead, the Fifth Circuit routinely applies the *Pike* balancing test to nondiscriminatory statutes.  *See* Part IV.A *supra*.  Indeed, the extraterritorial test articulated by Defendants is "merely a subset of the *Pike* balancing test . . . ."  *Jaynes* v. *Commonwealth of Virginia*, 48 Va. App. 673, 694 (Va. Ct. App. 2006), *rev'd on other grounds*, 276 Va. 443 (Va. 2008)).  *See also State* v. *Heckel*, 143 Wash.2d 824, 838 (Wash. 2001) ("the extraterritoriality analysis [is] appropriately regarded as [a facet] of the *Pike* balancing test"); *Eric M. Berman, P.C.* v. *City of New York*, No. 09-cv-3017 (ENV)(CLP), 2012 WL 4514407, at *15 (E.D.N.Y. 2012) ("other cases in [the Second Circuit] have analyzed legislation that is claimed to regulate extraterritorially under the more permissive *Pike* balancing test, which requires only that the burden on interstate commerce not clearly outweigh the local benefits of the statute."); Jack L. Goldsmith & Alan O. Sykes, *The Internet and the Dormant Commerce Clause*, 110 Yale L.J. 785, 804-05 (2001) ("the appropriate statement of the extraterritoriality concern is that states may not impose burdens on out-of-state actors that outweigh the in-state benefits.").

contrast, Plaintiffs' state law claims are asserted against Defendants who reside and/or do business in Texas and who made the overwhelming majority of their misleading statements in the U.S., including in Texas. *See supra* Part I.C. Defendants completely ignore these critical distinctions.

*Nat'l Century* is irrelevant for another reason: the statute at issue in that case was much narrower than the Texas common law and statutory regimes that give rise to Plaintiffs' claims here. The Ohio blue sky statute at issue in *Nat'l Century* prohibited "the making of misstatements in connection with the purchase or sale of securities." *Id*. at 884 (quoting O.R.C.§ 1707.44(B)(4)). In order to determine whether that statute reached out-of-state purchases or sales, the Court was "guided" by the Supreme Court's recent pronouncement in *Morrison* concerning a similar statute, Section 10(b). *Id.*

*Morrison*, of course, did not involve a dormant Commerce Clause challenge. Instead, it dealt with the narrow issue of whether Congress intended the federal securities laws to apply to securities transactions that occur on foreign exchanges. The Court focused squarely on the statutory language to determine its scope. Because Section 10(b) only prohibited deceit in connection with the purchase or sale of securities in a particular place, *i.e.*, on a domestic exchange, the Court concluded that the conduct the statute aimed to regulate was the domestic transaction itself (*i.e.*, the purchase or sale on the U.S. exchange), not the misstatements:

> [W]e think that the focus of the Exchange Act is not upon the place where the deception originated, but upon purchases and sales of securities in the United States. ***Section 10(b) does not punish deceptive conduct, but only deceptive conduct in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered. . . .***
>
> The primacy of the domestic exchange is suggested by the very prologue of the Exchange Act . . . .

130 S. Ct. at 2884-85 (emphasis added). Based upon this reasoning, the *Nat'l Century* court

similarly held that Ohio's blue sky statute was likewise "focused" on the place where the securities transaction occurs, not the place of the deception.  *Nat'l Century,* 755 F. Supp. 2d at 884.  Thus, it held that the Ohio blue sky statute did not apply because the transactions did not occur in Ohio.

In stark contrast to the statutes at issue in *Morrison* and *Nat'l Century,* however, Plaintiffs' causes of action do not require a connection with a purchase or sale of securities in a particular location.  Accordingly, *Morrison*'s "transactional" test has no application whatsoever to these claims.  In fact, *Morrison* made clear that simple fraud (without the requirement that it be in connection with a purchase or sale in a particular place) has no territorial restriction like the one found in Section 10(b):

> As case support for the "significant and material conduct" test, the Solicitor General relies primarily on *Pasquantino v. United States*, 544 U.S. 349 (2005).  In that case we concluded that the wire-fraud statute, 18 U.S.C. § 1343 . . . was violated by defendants who ordered liquor over the phone from a store in Maryland with the intent to smuggle it into Canada and deprive the Canadian Government of revenue . . . . Section 1343 prohibits "any scheme or artifice to defraud,"—fraud *simpliciter*, without any requirement that it be 'in connection with' any particular transaction or event.  The *Pasquantino* Court said that the petitioners' 'offense was complete the moment they executed the scheme inside the United States,' and that it was '[t]his domestic element of petitioners' conduct [that] the Government is punishing."  544 U.S. at 371.  Section 10(b), by contrast, punishes not all acts of deception, but only such acts "in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered."  ***Not deception alone, but deception with respect to certain purchases or sales is necessary for a violation of the statute***.

*Id*. at 2886-87 (emphasis added).[35]

No matter how hard Defendants try to obfuscate the point, the reality remains the same: Plaintiffs' state law claims seek only to redress misstatements and omissions, not to regulate international securities exchanges.  Making misrepresentations is not foreign commerce.  The

---

[35]    This portion of *Morrison* also rebuts any suggestion by Defendants that Plaintiffs' claims somehow violate the Supremacy Clause.  Def. Br. at 54-56.

U.K. remains entirely free to regulate its own capital markets and to develop its own disclosure rules, and Plaintiffs' state law claims pose absolutely no threat of interference.

Further exposing the fallacy of Defendants' argument is the U.K.'s recognition in *Morrison* (which Defendants conveniently ignore) that "restraining extraterritorial application of U.S. securities laws will not leave an enforcement void" precisely because "fraud continues to be actionable in the U.S. under state law":

> No one can reasonably dispute th[e] conclusion [that 'Congress [did not] intend to allow the United States to be used as a base for manufacturing fraudulent security devices for export, even when these are peddled only to foreigners.' . . . It is not the case that adoption of a rule restraining extraterritorial application of Rule 10b-5 would cause or allow the United States to become a base for foreign frauds. It would not leave an enforcement void.
>
> ***First, fraud continues to be actionable in the U.S. under state law.*** For example, Florida recognizes common law actions for fraud and deceit, fraudulent misrepresentation and negligent misrepresentation. Thus, ***the alleged conduct by the U.S. subsidiary in this case may be actionable as common law fraud, even if it is not securities fraud.***

U.K. Amicus Curiae Br., at *37-38 (emphasis added). By recognizing that fraud remains actionable under U.S. state law the U.K. suggested that such laws did not interfere with its sovereignty. *Id.* at *22-23, 37-38.[36]

Stated simply, Defendants cannot identify a single decision holding, on analogous facts,

---

[36]    In footnote 32 of their brief, Defendants cite several decisions that analyze a Commerce Clause or other constitutional challenge. None of these decisions invalidated a common law remedy based on the dormant Commerce Clause. *See Stone v. Frontier Airlines, Inc.*, 256 F. Supp. 2d 28, 47 (2002) (upholding a Massachusetts tort claim in the face of a dormant Commerce Clause challenge); *Cincinnati v. Beretta U.S.A. Corp.*, 768 N.E.2d 1136, 1150 (2002) (upholding a common law claim under the dormant Commerce Clause); *BMW of North America v. Gore*, 517 U.S. 559, 572-573 (1996) (not analyzing any common law claims under Commerce Clause, but holding that a state could not assess punitive damages against conduct that was lawful where it occurred and "had no impact on [that state] or its residents."); *N.Y. Times Company v. Sullivan*, 376 U.S. 254, 265(1964) (discussing application of First Amendment to state court judgments arising out of a libel claim and containing no Commerce Clause analysis); *San Diego Building Trades Council v. Garmon*, 359 U.S. 236, 246-247 (1959) (concluding National Labor Relations Board had exclusive jurisdiction over conduct that had been adjudicated by California court); *Cipollone v. Liggett Grp., Inc*., 505 U.S. 504, 521 (1992) (analyzing whether federal cigarette labeling act preempted certain state law claims and concluding that it did not entirely preempt such claims).

that claims like those asserted by Plaintiffs run afoul of the dormant Commerce Clause.  There is

a reason for that:  such claims are entirely constitutional.[37]


## CONCLUSION

For the above reasons, Defendant's motion should be dismissed in its entirety.[38]

Dated:  February 19, 2013

Respectfully submitted,

| | |
|---|---|
| Sammy Ford IV | /s/ Bernardo S. Garza |
| Federal Bar Number 950682 | Bernardo S. Garza |
| Texas Bar Number: 24061331 | SDT Bar No. 4779 |
| ABRAHAM, WATKINS, NICHOLS, | State Bar No. 03663500 |
| SORRELS, AGOSTO & FRIEND | CALLIER & GARZA, LLP |
| 800 Commerce Street | 4900 Woodway, Suite 700 |
| Houston, Texas 77002 | Houston, TX  77056 |
| Tel: (713) 222-7211 | Tel:  (713) 439-0248 |
| Fax: (713) 225-0827 | Fax:  (713) 439-1908 |
| | |
| *Attorneys in Charge* | *Attorneys in Charge* |
| | |
| Marc I. Gross | Darren J. Check |
| Jeremy A. Lieberman | Gregory M. Castaldo |
| Jason S. Cowart | Matthew L. Mustokoff |
| Matthew L. Tuccillo | Michelle M. Newcomer |
| Emma Gilmore | Margaret E. Onasch |
| POMERANTZ GROSSMAN HUFFORD | KESSLER TOPAZ MELTZER |
| DAHLSTROM & GROSS, LLP | AND CHECK, LLP |
| 600 Third Avenue | 280 King of Prussia Road |
| New York, NY  10016 | Radnor, PA  198087 |
| Tel: (212) 661-1100 | Tel:  (610) 667-7706 |
| Fax: (212) 661-8665 | Fax: (610) 667-7056 |
| | |
| *Attorneys for Plaintiffs Alameda County* | *Attorneys for Plaintiffs Connecticut Retirement* |

---

[37]     In any event, resolving the constitutionality of Plaintiffs' claims involves a factual inquiry inappropriate at the motion to dismiss stage.  *See Eric M. Berman, P.C.*, 2012 WL 4514407, at *33 ("The weighing of Local Law 15's benefits and burdens pursuant to *Pike* should instead be left to the finder of fact at trial, following a more complete development of the factual record.").

[38]     Should the Court disagree with Plaintiffs with respect to any aspect of Defendants' motion, Plaintiffs respectfully request the ability to re-plead their claims.

*Employees Retirement Association, Employees Retirement System of the City of Providence, and State-Boston Retirement System*

*Plans and Trust Funds, North Carolina Department of State Treasurer, Public Employees' Retirement Association of Colorado, City of Philadelphia Board of Pensions and Retirement, Los Angeles County Employees' Retirement Association, and San Diego City Employees' Retirement System*

**Plaintiffs' Appendix A: List of "Statements" Alleged in Alameda And Connecticut Complaints**

| Date | Statement | Corporate Defendant Speaker | Individual Defendant Speaker(s) | Alameda Complaint ¶¶ | Connecticut Complaint ¶¶ | Made In U.S. or U.K. | Made By Texas Resident | Concerned Texas / Gulf Operations | Counted in Defense Appendix 3 ? | Geography Asserted in Defense Appendix 3 |
|---|---|---|---|---|---|---|---|---|---|---|
| *Defendants' Pre-Spill Statements* | | | | | | | | | | |
| 1/16/2007 | Press Release | BP plc | | 331-332 | 153-54 | U.S. (TX) | | X | Yes | Same |
| 1/16/2007 | Form 6-K | BP plc | | 331-332 | 153-54 | U.S. (D.C.) | | X | No | n/a |
| 5/9/2007 | 2006 Sustainability Report | BP plc | | 333-334 | 155-156 | U.K. | | X | Yes | Same |
| 5/16/2007 | House Testimony | BP America | Malone | 335-336 | 157-158 | U.S. (D.C.) | X | X | Yes | Same |
| 7/24/2007 | Conference call w/ analysts + investors | BP plc | Hayward | 337-338 | 159-160 | U.K. | | X | Yes | Same |
| 9/25/2007 | Sanford Bernstein 4th Annual Strategic Decisions Conference - Speech | BP Exploration | Inglis | 339-340 | 161-162 | U.K. | | X | Yes | Same |
| 10/25/2007 | Press Release | BP plc | | 341-342 | 163-164 | U.S. (TX) | | X | Yes | Same |
| 10/25/2007 | Form 6-K | BP plc | | 341-342 | 163-164 | U.S. (D.C.) | | X | No | n/a |
| 11/8/2007 | Houston Forum - Speech | BP plc | Hayward | 343-344 | 165-166 | U.S. (TX) | | X | Yes | Same |
| 2/22/2008 | 2007 Annual Review | BP plc | Hayward | 345-346 | 167-168 | U.K. | | X | Yes | Same |
| 2/27/2008 | Conference Call w/ analysts + investors (incl 2008 Strategy Presentation) | BP plc | Hayward | 347-348 | 169-170 | U.K. | | X | Yes | Same |
| 3/4/2008 | 2007 Annual Report on Form 20-F | BP plc | | n/a | 171-172 | U.S. (D.C.) | | X | Yes | U.K. |
| 4/17/2008 | 2008 Annual General Meeting speeches | BP plc | Hayward | 349, 351 | 173-174 | U.K. | | X | Yes | Same |
| 4/17/2008 | Form 6-K | BP plc | Hayward | 350-351 | n/a | U.S. (D.C.) | | X | No | n/a |
| 12/17/2008 | HRH Prince of Wales 3rd Annual Accounting for Sustainability Forum - Speech | BP plc | Hayward | 352-353 | 175-176 | U.K. | | X | Yes | Same |
| 2/24/2009 | 2008 Annual Review | BP plc | Hayward | 354-356 | 177-179 | U.K. | | X | Yes | Same |
| 3/4/2009 | 2008 Annual Report on Form 20-F | BP plc | (signed) | 357-359 | 180-182 | U.S. (D.C.) | | X | Yes | U.K. |
| 3/10/2009 | Initial exploration plan for Mississippi Canyon Block 252 (BP's EP) | BP Exploration | Hayward | 360-369 | 183-188 | U.S. (LA) | X | X | Yes | Unclear |
| 4/16/2009 | 2008 Sustainability Review | BP plc | Hayward | 370-371 | 189-190 | U.K. | | X | Yes | Same |
| 6/30/2009 | Regional Oil Spill Response Plan - Gulf of Mexico (Regional OSRP for GOM) | BP Exploration | | 372-373 | 191-193 | U.S. (TX) | X | X | Yes | Unclear |
| 11/19/2009 | Senate Testimony | BP America | Rainey | 374-376 | 194-196 | U.S. (D.C.) | X | X | Yes | Same |
| 2/26/2010 | 2009 Annual Review | BP plc | | 377-378 | 197-198 | U.K. | | X | Yes | Same |
| 3/5/2010 | 2009 Annual Report on Form 20-F | BP plc | (signed) | 377-380 | 199-200 | U.S. (D.C.) | | X | Yes | U.K. |
| 3/22/2010 | Howard Weil Energy Conference - Speech | BP Exploration | Inglis | 381-382 | 201-202 | U.S. (LA) | | X | Yes | Same |
| 3/23/2010 | Peterson Institute for International Economics - Speech | BP plc | Hayward | 383-384 | 203-204 | U.S. (D.C.) | | X | Yes | Same |
| 4/15/2010 | 2009 Sustainability Review | BP plc | Hayward | 385-388 | 205-208 | U.K. | | X | Yes | Same |
| 4/15/2010 | 2009 Sustainability Report | BP plc | | 389-391 | 209-211 | U.K. | | X | Yes | Same |

| # | Date | Statement | Corporate Defendant Speaker | Individual Defendant Speaker(s) | Alameda Complaint ¶ | Connecticut Complaint ¶ | Made In U.S. or U.K. | Made By Texas Resident | Concerned Texas / Gulf Operations | Counted in Defense Appendix 3 ? | Geography Asserted in Defense Appendix 3 |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | | **Defendants' Statements Following The Deepwater Horizon Explosion on April 20, 2010 & Ensuing Oil Spill** | | | | | | | | | |
| 26 | 4/28/2010 | Joint BP - NOAA press conference | BP Exploration | Suttles | 399, 407- 412 | 214-215 | U.S. (LA) | x | x | Yes | Same |
| 27 | 4/29/2010 | CBS "The Early Show" interview | BP Exploration | Suttles | 401(a), 407- 412 | 216-217 | U.S. (LA) | x | x | Yes, But Three Were Counted As A Single Statement | Same |
| 28 | 4/29/2010 | ABC "Good Morning America" interview | BP Exploration | Suttles | 401(b), 407- 412 | 216-217 | U.S. (LA) | x | x | | Same |
| 29 | 4/29/2010 | NBC "Today Show" interview | BP Exploration | Suttles | 401(c), 407- 412 | 216-217 | U.S. (LA) | x | x | | Same |
| 30 | 4/29/2010 | Form 6-K | BP plc | Hayward | 404, 407- 412 | 218-219 | U.S. (D.C.) | | x | Yes | U.K. |
| 31 | 4/30/2010 | Form 6-K | BP plc | Hayward | 405, 407- 412, 432- | 220-221 | U.S. (D.C.) | | x | Yes | U.K. |
| 32 | 4/30/2010 | Form 6-K | BP plc | Hayward | 406, 407- 412, 432- 437 | 220-221 | U.S. (D.C.) | | x | Yes | U.K. |
| 33 | 4/30/2010 | BP website statement | BP plc | | 414-415, 437 | 220-221 | Unclear | | x | Yes | U.K. |
| 34 | 5/4/2010 | Form 6-K | BP plc | Hayward | 416-417, 432-437 | 222-223 | U.S. (D.C.) | | x | Yes | U.K. |
| 35 | 5/5/2010 | Houston Chronicle interview | BP plc | Hayward | 418-419, 432-437 | 224-225 | U.S. (TX) | | x | Yes | Same |
| 36 | 5/10/2010 | House Testimony | BP America | McKay | 420, 423- 424, 432-437 | 226-227 | U.S. (D.C.) | x | x | Yes | Same |
| 37 | 5/14/2010 | ABC "Good Morning America" interview | BP Exploration | Suttles | 421, 423- 424, 432-437 | 228-229 | U.S. (LA) | x | x | Yes, But Two Were Counted As A Single Statement | Same |
| 38 | 5/14/2010 | NBC "Today Show" interview | BP Exploration | Suttles | 422, 423- 424, 432-437 | n/a | U.S. (LA) | x | x | | Same |
| 39 | 5/14/2010 | CNN remarks | BP plc | Dudley | 425-426, 437 | n/a | Unclear | | x | No | n/a |
| 40 | 5/14/2010 | Unified Command press briefing | BP Exploration | Suttles | 424, 432- 437 | n/a | U.S. (LA) | x | x | Yes | Same |
| 41 | 5/17/2010 | ABC "Good Morning America" interview | BP Exploration | Suttles | 427, 429, 432-437 | 230-231 | U.S. (LA) | x | x | Yes | Same |
| 42 | 5/21/2010 | Unified Command press briefing | BP Exploration | Suttles | 428-429, 432-437 | 232, 234 | U.S. (LA) | x | x | Yes, But Two Were Counted As A Single Statement | Same |
| 43 | 5/21/2010 | ABC "Good Morning America" interview | BP Exploration | Suttles | 430-431, 432-437 | 233-234 | U.S. (LA) | x | x | | Same |
| 44 | 5/22/2010 | NPR Interview | BP Exploration | Suttles | 432-437 | 235-238 | U.S. (LA) | x | x | Yes | Same |

| Date | Statement | Corporate Defendant Speaker | Individual Defendant Speaker(s) | Alameda Complaint | Connecticut Complaint | Made In U.S. or U.K. Resident | Made By Texas Resident | Concerned Texas / Gulf Operations | Counted in Defendants' Appendix 3? | Geography Asserted in Defense Appendix 3 |
|---|---|---|---|---|---|---|---|---|---|---|
| | | | | 439(a), 440-441 | n/a | | | | | |
| | | | | 439(b), 440-441 | 240, 246 | | | | | |
| | | | | 439(c), 440-441 | 241, 246 | | | | | |
| | | | | 439(d), 440-441 | 242, 246 | | | | | |
| | | | | 439(e), 440-441 | 243, 246 | | | | | |
| | | | | 439(f), 440-441 | 244, 246 | | | | | |
| | | | | 439(g), 440-441 | 244, 246 | | | | | |
| | | | | **TOTALS:** | | **Plaintiffs** | | | **Defendants' Appendix 3** | |
| | | | | | | U.S. - 30 | | | U.S. - 15 | |
| | | | | | | U.K. - 19 | | | U.K. - 25 | |
| | | | | | | Unclear - 2 | | | Unclear - 3 | |
| | | | | | | 51 | | | 43 | |
| | | | | | | | | | Absent - 8 | |